**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

**v.**

**Harry THOMPSON et al., Appellees.**

**No. 11843.**

Court of Civil Appeals of Texas, Austin.

Oct. 20, 1971.

Rehearing Denied Nov. 10, 1971.

**312**

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walk-er, Executive Asst. Atty. Gen., John R. Grace, J. H. Broadhurst, R. L. Lattimore, Asst. Attys. Gen., Austin, for appellants.

Clinton & Richards, David R. Richards, Austin, for appellees.

O'QUINN, Justice.

Harry Thompson and three other operators of taverns, doing business in Dallas, El Paso, and San Antonio, and A's Vending, a Texas Corporation, selling and leasing coin-operated music and entertainment machines, brought this suit as a class action for a declaratory judgment and for injunctive relief against the State Comptroller of Public Accounts and the Attorney General of Texas.

The basis of the lawsuit is the interpretation of the Attorney General and enforcement by the Comptroller of tax statutes of the State pertaining to coin-operated machines under amendments to chapter 13, Title 122A, Taxation-General, V.A.T.S., enacted in 1969. (Acts 1969, 61st Leg., p. 1606, ch. 497, effective September 1, 1969)

On advice of the Attorney General, contained in two written opinions dated July 23, 1969, and August 14, 1969, the Comptroller took the position, after the amendatory Act became effective, that the operator of any business selling and serving alcoholic beverages for on-premises consumption was prohibited from owning coin-operated music, skill, or entertainment machines used in the place of business, although alcoholic beverage operators are permitted under the statute to rent or lease such machines, for use in their places of business, from persons licensed in the coin-operated machine business.

Thompson and the other plaintiffs sought to enjoin the Comptroller and the Attorney General from enforcing provisions of the statute in such manner as to prohibit alcoholic beverage operators from owning coin-operated machines they used in their places of business. These plain-

tiffs took the position that the defendants had misconstrued the statute, and that enforcement according to the Attorney General's interpretation violated the constitutional rights of plaintiffs and the class they represented by depriving them of property without due process of law.

By an amendment passed at a called session subsequent to the regular session in 1969 the Legislature provided in Section 1(a) of Article 13.17:

"Notwithstanding any language herein contained to the contrary, no provision herein shall be construed to require a fee for a general business license for an individual who, on the effective date of this Act, only owns a single place of business and owns a music or skill or pleasure coin-operated machine in such place of business." (Acts 1969, 61st Leg., 2nd C.S., p. 61, ch. 1, art. 9, sec. 1, effective October 1, 1969)

The trial court held that plaintiffs were entitled to declaratory judgment, pursuant to provisions of Article 2524-1, Vernon's Anno.Civ.Stats., and entered judgment that:

(1) Plaintiffs Thompson and the other tavern operators are " * * * required to be licensed under the terms of * * * Article 13.17 and to pay the license fee required * * * " except to the extent they may be exempt from the fee under Sections 1(a) and 27(1) of Article 13.17.

(2) Section 27(1) is unconstitutional insofar as construed to deny persons engaged in selling and serving alcoholic beverages the right to buy, own, and display, as opposed to leasing or renting, coin-operated machines for use in their places of business.

(3) Article 13.02(2) is unconstitutional and void insofar as it seeks to limit to fifty percent of gross receipts the compensation to be paid lessees of coin-operated machines under contracts made with owners and lessors of the machines.

The trial court also enjoined the Comptroller and the Attorney General from enforcing Section 27(1) so as to prohibit the plaintiffs operating taverns from displaying and using the machines they own in their places of business.

All parties to the lawsuit have appealed. The Comptroller and the Attorney General on appeal urge error of the trial court in holding unconstitutional and void Section 27(1) of Article 13.17 and Section 13.-02(2). The plaintiffs have appealed from that part of the trial court's judgment holding that the tavern operators are required to pay the license fee of $300 as owners of the machines used in the business of selling and serving alcoholic beverages for on-premises consumption.

To make clear the effect of the trial court's judgment it is necessary to review the relevant parts of the tax statutes under consideration.

The declared purpose of the Act by which Article 13.17 was adopted " * * * is to provide comprehensive regulation of music and skill or pleasure coin-operated machines and businesses dealing in these machines, and to prevent persons in these businesses from having certain concurrent financial interests in, or unauthorized financial dealings with, certain alcoholic beverage businesses." (Sec. 1, Art. 13.17)

Application of this purpose is found in Section 27(1) of Article 13.17:

"It shall be unlawful for a person who has a financial interest in a business required to be licensed by this Article to knowingly have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption unless otherwise permitted in this Article."

Section 8(1) of Article 13.17 states: "No person shall engage in business to manufacture, own, buy, sell, or rent, lease, trade, lend, or furnish to another, or repair, maintain, service, transport within the state, store, or import, a music coin-operated machine or a skill or pleasure coin-oper-

ated machine without a license issued under this Article."

Two types of licenses are prescribed under Section 15 of Article 13.17:

"A *general business licensee* may engage in business to manufacture, *own*, buy, sell, rent, lease, trade, repair, maintain, service, transport or exhibit within the state, and store music and skill or pleasure coin-operated machines." Sec. 15(2) (Emphasis added)

"An *import licensee* may engage in business to import, transport, *own*, buy, repair, sell, and deliver, music and skill or pleasure coin-operated machines, for sale and delivery within this State" Sec. 15(3) (Emphasis added)

The *general licensee* is permitted to engage in twelve activities, including all permitted the *import licensee*, except to import and to deliver. The *import licensee* may engage in the business to import and to deliver, and in addition may engage in five of the twelve activities permitted the *general licensee*, those five activities being to own, buy, sell, repair and transport. Section 15 authorizes, but does not require, the holding of both kinds of licenses by any "person who wishes to engage in certain business dealings with music coin-operated machines or skill or pleasure coin-operated machines." Sec. 15(1)

Section 27(1), as already observed, provides, "It shall be unlawful for a person who has a financial interest in a business required to be licensed * * * [under the Act] to knowingly have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption unless otherwise permitted * * *" under the Act. Certain exceptions not considered pertinent to the issues of this case are stated in Section 27, but the various provisions found in the twelve subparagraphs of Section 27 are consistent with and give added emphasis to the declared purpose of the Act "to provide comprehensive regulation of music and skill or pleasure coin-operated machines and businesses dealing in these machines, and to prevent persons in these businesses from having certain financial interests in, or unauthorized financial dealings with, certain alcoholic beverage businesses," as stated initially in Section 1.

Included in the same enactment by which Article 13.17 became a new statutory regulation, provisions of Article 13.02 were amended to provide that "No owner [of machines] shall agree or contract with a bailee or lessee of a coin-operated machine to compensate said bailee or lessee in excess of fifty percent (50%) of the gross receipts of such machine * * *" after the owner has been reimbursed from the gross receipts for an annual occupation tax of $15 on each machine.

As we have noted, the trial court held that tavern operators desiring to own and use their own coin-operated machines were required to obtain licenses under Section 15 and to pay the annual fee of $300 prescribed by Section 16(1), unless exempt from payment of the fee under Section 1(a) or otherwise exempt under Section 27(1). The court also held Section 27(1) unconstitutional insofar as it denies tavern operators the right to own machines, as opposed to leasing them, and held Article 13.-02(2) unconstitutional insofar as it limits compensation which licensed machine operators may pay to tavern operators leasing coin-operated machines.

 It is a well established rule that in construing an enactment by the Legislature the courts will seek to ascertain the intention of the Legislature as expressed in the statute, and that such intent will be ascertained from the entire act and not from isolated portions of the enactment. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951); Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex.Sup. 1965). When the legislative intent is elusive and unclear, resort may be had to rules of construction to give meaning to the statute. State v.

Shoppers World, Inc., 380 S.W.2d 107 (Tex.Sup. 1964).

■ We find it clearly the intent of the Legislature, as expressed in the Act, that no person, unless excepted by Section 8(3), (4), or (5) or by Section 1(a), or Section 27(1) of Article 13.17, may engage in business to own "a music coin-operated machine or a skill or pleasure coin-operated machine without a license issued under" the statute. The language of the statute is plain and emphatic, and in allowing certain exceptions does not include persons engaged in selling or serving alcoholic beverages for on-premises consumption as an exempted class. A familiar rule of statutory construction is that exceptions make plain the intent that the statute should apply to all persons not excepted. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56 (1932); Gulf, C. & S. F. Ry. Co. v. Temple Grain & Hay Co., 122 Tex. 288, 58 S.W.2d 47 (1933); Broughton v. Humble Oil & Refining Co., 105 S. W.2d 480 (Tex.Civ.App., El Paso 1937, writ ref.); North Common School District v. Live Oak County Board of School Trustees, 145 Tex. 251, 199 S.W.2d 764 (Tex.Sup. 1946); State v. Richards, 157 Tex. 166, 301 S.W.2d 597 (Tex.Sup. 1957).

Under Section 8 the issuance of a license is a prerequisite to engaging "in business to manufacture, *own,* buy, sell, *or* rent, lease, trade, lend *or* furnish to another, *or* repair, maintain, service, transport within the state, store, *or* import, a music coin-operated machine or a skill or pleasure coin-operated machine." (Emphasis added)

Three exceptions are provided in Section 8:

"*No license* is required [1] for a corporation or association organized and operated * * * for religious, charitable, educational, or benevolent purposes, * * * *to own,* or lease or rent from another, * * * [machines] for the corporation's or association's exclusive use and in furtherance or the purposes for which it is es-

tablished," [2] "for an individual *to own* a * * * machine for personal use and amusement in his private residence," or [3] "for any person subject to regulation by the Railroad Commission * * * to transport or store in the due course of business a * * * machine *not owned* by him." (Emphasis added)

Another type of exception is found in the provisions of Section 1(a) relieving certain tavern owners from payment of "a fee for a general business license" if on the effective date of the Act such person owned a single place of business and owned a machine used in that business.

This exception appears to relieve this class of tavern owners only from payment of the fee required by Section 16(1). Since the intent of the Legislature, as clearly disclosed by the remainder of the Act, is that machine businesses licensed under the Act may not have financial interests in certain alcoholic beverage businesses, the amendatory Section 1(a) may be construed by the courts to mean that this limited class of tavern owners are also relieved of the duty to obtain licenses to own the machines which they owned when the Act became effective. Board of Managers of Harris County Hospital District v. Pension Board of Pension System for City of Houston, 449 S.W.2d 33 (Tex.Sup. 1969).

For if Section 1(a) be interpreted to exempt such tavern owners from payment of the fee, without also excusing them from securing licenses to own the machines, the exception plainly conflicts with Section 27(1) making it unlawful for a person financially interested in a machine business licensed under the Act to have a financial interest in a business selling and serving alcoholic beverages.

■ The conclusions we have reached thus far bring us to the holding that only the tavern owners who had a single place of business, and owned a machine used in the place of business, at the time the Act became effective, may own a machine

without being licensed or required to pay the license fee. We further hold that since persons having a financial interest in a machine business required to be licensed under the Act are prohibited under Section 27(1) from having an interest also in any business selling or serving alcoholic beverages for on-premises consumption, no tavern owner may be licensed to own and exhibit a machine in his place of business so long as the tavern owner continues to engage in the business of selling and serving alcoholic beverages.

In reaching these conclusions we are brought now to consider whether the provisions of the Act are constitutional which prevent tavern owners not exempt under Section 1(a) or Section 27(1) from owning machines used in their places of business and which limit their compensation to fifty percent of gross receipts on machines leased and used by them in the taverns.

■ Plaintiffs pleaded that the Act as interpreted and applied by the Attorney General and the Comptroller denies "to the Plaintiffs 'due course' of law, due process of law and equal protection * * * in violation of Article 1, Section 19 of the Constitution of the State of Texas and the due process and equal protection clauses of the Constitution of the United States." Specifically, in this connection, plaintiffs alleged, " * * * whereas tavern owners and others engaged in the business of selling alcoholic beverages for on-premises consumption are denied absolutely the right to own coin operated machines * * * other persons, restauranteurs, drugstores and other places of business which own and display coin operated machines are not so inhibited * * * thereby arbitrarily creating a preferred class of persons in violation of the aforesaid constitutional provisions."

We do not so read the statute. The statute simply provides that persons licensed in the machine business under Article 13.17 may not have a financial interest in certain retail alcoholic beverage businesses. The effect is that tavern owners and other dispensers of alcoholic beverages for on-premises consumption may not concurrently engage in business as a licensed machine owner or importer while they remain in the alcoholic beverage business.

The stated purpose of the statute, and a purpose further demonstrated by its various provisions, is to regulate coin-operated machine businesses in this State and to prevent them from holding financial interests in certain retail alcoholic beverage outlets. Logically the statute operates conversely; that is, the person owning a business dispensing alcoholic beverages for on-premises consumption may not lawfully become the holder of a license to own and exhibit coin-operated machines for the obvious reason that as a licensee under Article 13.17 the on-premises alcoholic beverage dispenser is prevented by Section 27(1) from concurrently having a financial interest in the business he already owns.

■ Plaintiffs urge on appeal that the fee of $300 imposed by Article 13.17 is an occupation tax and not a license fee and that the tax so imposed "violates the mandate of Article VIII, sec. 2 of the Constitution, providing: 'all occupation taxes shall be equal and uniform upon the same class of subjects * * *'" If the fee is an occupation tax, the exemption of persons engaged in the same occupation as the persons taxed "renders the levy discriminatory and therefore unconstitutional." Calvert v. McLemore, 163 Tex. 562, 358 S.W. 2d 551 (1962).

Viewing the Act as a whole, we conclude that in levying the annual fee of $300 on any "person who wishes to engage in certain business dealing with music coin-operated machines or skill or pleasure coin-operated machines" the Legislature intended the licensing as a part of the statute's overall purpose to regulate the machine business and not as a tax designed primarily to raise revenue. In the same Act by which Article 13.17 became law the Legislature amended Article 13.02 which imposes "an annual *occupation tax* of $15.00" on each "coin-operated machine" and provides

a penalty for violation of the rent ceiling established in paragraph (2) of the Article, authorizing revocation of "any *license* held under Article 13.17." (Emphasis added)

From a consideration of the statute as a whole, if the primary purpose of the fees provided is to raise revenue, "then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes." Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937). In Hurt v. Cooper the Supreme Court recognized that "It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure."

A statute under consideration in Calvert v. McLemore, 163 Tex. 562, 358 S.W.2d 551 (1962), was found by the Supreme Court to be "plainly a revenue measure. It does not relate in any way to the public safety, morals, convenience or general welfare." (358 S.W.2d 552, col. 2)

■ We conclude that the Act under consideration is a regulatory licensing statute and not primarily a tax measure. Being an exercise of the police power of the Legislature, the statute stands against an attack for unconstitutionality unless shown to constitute an unreasonable exercise of such power, and the burden is on the party attacking the law. Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 (1939). In determining whether the exercise of the police power is reasonable and necessary, "There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." Texas State Board of Barber Examiners v. Beaumont Barber College, Inc., 454 S.W.2d 729, 732 (Tex.Sup. 1970), quoting from Texas National Guard Armory Board v.

McCraw, supra, and Smith v. Davis, 426 S.W.2d 827 (Tex.Sup. 1968).

As the Supreme Court said in Smith v. Davis, "In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours." (426 S.W.2d 831, col. 1)

We decline to hold unconstitutional the provisions of Article 13.17 having the effect of denying to persons engaged in selling and serving alcoholic beverages for on-premises consumption the privilege of being contemporaneously licensed under the statute to engage in the coin-operated machine business.

■ Plaintiffs pleaded that Article 13.-02, as amended in the Act under consideration, by limiting to fifty percent of gross receipts the maximum compensation which licensed machine businesses may pay to bailees and lessees, is an unconstitutional exercise of legislative authority. "This action by the Legislature," plaintiffs alleged, "has fixed prices in violation of the constitutional right to freedom of contract and represents a wholly arbitrary and capricious act denying to the Plaintiffs and all of the class they represent due process of law and equal protection of law."

It is not contended that the statute impairs or tends to impair lease contracts existing prior to and at the time the law became effective. That question apparently was settled in a clause providing that any "bona fide financial interest or commitment in existence prior to September 1, 1969 * * *" shall not be deemed in violation of the statute, and making renewals and alterations subject to approval by the Comptroller. (Section 27(1), Art. 13.17)

■ It is a rule long recognized by the Supreme Court of Texas that, in the exer-

cise of the police power, the Legislature may regulate by reasonable requirements the business transactions of the citizens. Nash Hardware Co. v. Morris, 105 Tex. 217, 146 S.W. 874 (1912); Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648 (1905). The rule was stated later, in its application particularly to contracts, that " * * * if a law regulating contracts to be executed in the future has as its object that which may be clearly and reasonably considered by the Legislature to be the public welfare, prescribes means reasonably calculated and necessary to aid in accomplishing that object, and operates in a reasonable and not in an arbitrary, capricious, or oppressive manner, it is within the police power, constitutes due process of law, and, consequently, is superior to the liberty of contract." Wylie v. Hays, 114 Tex. 46, 263 S.W. 563 (1924). A statute making it unlawful for wholesale dealers in alcoholic beverages to sell to retailers who were delinquent in payment of an account for alcoholic beverages was held by this Court not to impair the freedom of contract in violation of the constitution. Neel v. Texas Liquor Control Board, 259 S.W.2d 312 (Tex.Civ.App. Austin 1953, writ ref. n. r. e.).

The record in this case shows that the Legislature, at the time the Act in question was passed, had before it a report of its investigating committee bearing evidence that unregulated competition among machine concerns resulted in violence and retaliatory destruction of property growing out of rival bidding for contracts with operators of public places using leased machines. Some tavern owners, induced by higher offers, abandoned existing contracts and accepted machines from rival companies offering larger shares in gross receipts. In keeping with the evident intent of the Legislature to regulate the coin-operated machine business in Texas, the provisions of Article 13.02(2), limiting the compensation which a machine licensee may contract to pay the lessee, was reasonably designed to correct evils the Legisla-

ture found to exist under the prior system of uncontrolled pricing of rents by rival machine companies.

The Supreme Court of the United States in 1934 upheld a statute of the State of New York authorizing the fixing of milk prices at all levels to avoid the effects of unregulated sale of milk that "leads to price cutting and other forms of destructive competition." Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). There the principle was established that "price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy of the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

That freedom of contract is not in every situation an absolute right was stated in Nebbia v. New York in this language: " * * * neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest."

We view the provisions of Article 13.-02(2) as a reasonable and necessary exercise by the Legislature of the police power in meeting problems affecting the public welfare and in prescribing reasonable requirements for the regulation of the business transactions affected.

The judgment of the trial court, insofar as it is in harmony with the holding of this Court, is affirmed; but in all other matters the judgment is reversed.

It is the judgment of this Court (1) that all persons not exempt under the provisions of Section 1(a), Section 8(3), (4), (5), and Section 27(1) of Article 13.17 are required to be licensed, and to pay the license fees prescribed by Sections 15 and 16(1), to engage in the business to own or

otherwise deal in coin-operated music, skill, or pleasure machines; (2) that persons while engaged in the business of selling or serving alcoholic beverages for on-premises consumption may not hold concurrently any license or licenses required under provisions of Article 13.17 to own coin-operated music, skill, or pleasure machines; (3) that Section 27(1) of Article 13.17 is a valid regulation of coin-operated machine businesses and their financial relations with businesses selling or serving alcoholic beverages for on-premises consumption and does not violate the constitutional rights of plaintiffs and the class or classes they represent; and (4) that article 13.02(2) is a valid regulation of contracts between licensees in the coin-operated machine business and their lessees and does not place an unconstitutional restraint upon the freedom of contract of plaintiffs and the class or classes they represent.

The judgment of the trial court is in part affirmed and in part reversed, and judgment is here rendered as stated.

Affirmed in part and in part reversed and rendered.

SHANNON, J., not sitting.