Harry **THOMPSON** et al., Petitioners,

v.

Robert S. **CALVERT**, Controller of Public Accounts of the State of Texas et al., Respondents.

No. B–3093.

Supreme Court of Texas.

Dec. 27, 1972.

Rehearing Denied Feb. 1, 1973.

Clinton & Richards, David R. Richards, Austin, for petitioners.

Crawford C. Martin, Atty. Gen., R. L. Lattimore, Asst. Atty. Gen., Austin, for respondents.

DENTON, Justice.

This action was brought by Harry Thompson and three other tavern and club operators and a vending machine company operator as a class action for a declaratory judgment and for injunctive relief against the State Comptroller of Public Accounts and the Attorney General of Texas, seeking to obtain a judgment declaring certain provisions of Articles 13.17, and 13.02, Title 122A–Taxation–General, Vernon's Ann. Civ.Stat., (Acts 1969, 61st Leg., p. 1606, ch. 497) pertaining to coin-operated machines, unconstitutional, and to enjoin respondents from enforcing certain provisions of the statute. The relevant portions of the statute sought to be nullified as construed read as follows:

"Art. 13.17 § 8(1) No person shall engage in business to manufacture, own, buy, sell, or rent, lease, trade, lend, or furnish to another, or repair, maintain, service, transport within the state, store, or import, a music coin-operated machine or a skill or pleasure coin-operated machine without a license issued under this Article.

"Art. 13.17 § 27(1) It shall be unlawful for a person who has a financial interest in a business required to be licensed by this Article to knowingly have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption unless otherwise permitted in this Article.
. . .

"Art. 13.02(2) . . . No owner shall agree or contract with a bailee or lessee of a coin-operated machine to compensate said bailee or lessee in excess of fifty percent (50%) of the gross receipts of such machine after the above reimbursement has been made.
. . ."

The trial court declared unconstitutional that portion of Art. 13.02(2) which limits the revenues to be received by the lessee. It further declared Art. 13.17 Sec. 27(1)

unconstitutional and void insofar as it may be construed to deny tavern and club owners the right to purchase and own coin-operated machines for use in their businesses, and permanently enjoined the Comptroller and Attorney General from attempting to enforce the provisions of such subsection.

The court of civil appeals construed § 27(1) to mean that no tavern owner may be licensed to own a machine in his place of business so long as the tavern owner continues to engage in the business of selling and serving alcoholic beverages. The court then reversed the trial court's judgment and held that § 27(1) of Art. 13.17 is a valid regulation of the coin-operated machine business and its relation to tavern owners; that Art. 13.02(2) is a valid regulation of contracts between licensees in the coin-operated machine business and their lessees; and that neither provision violates the constitutional rights of plaintiffs and the class or classes they represent. 472 S.W.2d 311.

It is shown in the record that in 1969 the Legislature, in response to a trend of increasing violence and other illegal activity which centered around taverns and night clubs, created a special committee to study the problem. That committee determined that some of those engaged in the coin-operated machine business had gained a great deal of control over and financial interest in certain alcoholic beverage businesses. Art. 13.17 was then passed ". . . to provide comprehensive regulation of music and skill or pleasure coin-operated machines and businesses dealing in these machines, and to prevent persons in these businesses from having certain concurrent financial interest in, or unauthorized financial dealings with, certain alcoholic beverage businesses." Tex.Tax.-Gen.Ann. Art. 13.17 § 1 (1969).

The primary basis of this lawsuit is the interpretation by the Attorney General and the enforcement by the Comptroller of the taxing statute pertaining to coin-operated machines under the Articles quoted above. Section 8(1) of Art. 13.17 provides that any person who engages in business to manufacture, own, buy, sell, etc., a coin-operated machine must be licensed. Section 27(1) of Art. 13.17 declares that it shall be unlawful for a person required to be licensed under § 8(1) to have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption. With the exception of the "Grandfather Clause" excluding a minimal number of persons from the license requirements,[1] the foregoing sections were construed by the Attorney General to mean that ". . . a person who owned and operated his own coin-operated machine in his own place of business was engaged in a business which is required to be licensed under this Act. Therefore, . . . one who is engaged in the business of selling alcoholic beverages for on-premises consumption is absolutely barred from owning and operating a coin-operated machine in his liquor business. . . ." [Tex. Att'y Gen. Op. No. M–449 (1969), p. 228]. The declared purpose of the Act ". . . is to provide comprehensive regulation of music and skill or pleasure coin-operated machines and businesses dealing in these machines, and to prevent persons in these businesses from having certain concurrent financial interests in, or unauthorized financial dealings with, certain alcoholic beverages businesses." Sec. 1, Art. 13.17. This regulation is imposed through the licensing process. Section 8(1) of Art. 13.17 states: "No person shall engage in business to manufacture, own, buy, sell, or rent, lease, trade, lend, or furnish to another, or repair, maintain, service, transport within the state, store, or import, a music

---

1. § 1(a) of Art. 13.17 "Notwithstanding any language herein contained to the contrary, no provision herein shall be construed to require a fee for a general business license for an individual who, on the effective date of this Act, only owns a single place of business and owns a music or skill or pleasure coin-operated machine in such place of business."

coin-operated machine or a skill or pleasure coin-operated machine without a license issued under this Article." Section 15 provides for two types of licenses for a person who wishes to engage in certain business dealings with music coin-operated machines or skill or pleasure coin-operated machines; to wit, a general business license and an import license. These two types of licenses are for purposes material here virtually identical.

The Act then provides in Sec. 27(1), "It shall be unlawful for a person who has a financial interest in a business *required to be licensed* by the Article to knowingly have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption." (Emphasis added.) The Attorney General has interpreted this Act to provide that since Sec. 8(1) requires a person to obtain a license if he *owns* a coin-operated machine, he can not be permitted to "own" a coin-operated machine and at the same time have a financial interest in a business selling or using alcoholic beverages. We think this is contrary to the clear intent of the Legislature.

The stated purpose of the Act was to regulate coin-operated machines and "businesses" dealing in these machines, and to prevent persons in these businesses from having a financial interest in certain alcoholic beverage businesses. Section 15 sets out those who are required to obtain either a general business license or an import license; to wit, one who engages in a certain "business dealing" with coin-operated machines.

In McCauley v. Hobbs Trailers, 357 S.W. 2d 494 (Tex.Civ.App.1962, no writ), the court construed Section 2 of Article 6165a, V.A.C.S. which defines a loan broker as "a person, firm, or corporation * * * who pursues the business of lending money, . . . and taking for security for the payment of such loans . . . an assignment of wages * * *." The court held that the term "business" connoted a distinctive business, i. e., an occupation or employment habitually engaged in for the purpose of profit or improvement. See 12 C.J.S. p. 765, "Business As a Noun—Narrower Sense."

■ We think the clear legislative intent of the Act was to regulate those engaged in the business of dealing in coin-operated machines; meaning those who are engaged in manufacturing, owning, buying, selling, renting, leasing, trading, lending, etc., such machines as an occupation or employment. The Act clearly requires a license for those thus engaged in such distinctive business, such as the Petitioner, A's Vending, a Texas Corporation, which admittedly was engaged in the business of selling coin-operated machines. On the other hand, we do not think it applies to the individual Petitioners and others similarly situated whose distinctive business, occupation and employment is that of selling and serving alcoholic beverages for on-premises consumption, and who only own coin-operated machines for use and display on their own premises and only as an adjunct or incidental thereto. The regulation and control of alcoholic beverages has long been recognized as an exercise of the state's police power. The Texas Liquor Control Act, Art. 666-1, Vernon's Texas Penal Code, provides a comprehensive scheme for the regulation of the alcoholic beverage industry.

■■ We think it was the clear intent of the Legislature that this Act does not require the owner of a permit to engage in selling or serving alcoholic beverages for on-premises consumption to obtain a license under Sec. 8(1) of Article 13.17 merely because he owns coin-operated machines, so long as the ownership and use of such machines are purely incidental to that business. As interpreted, the Act effectively carries out the intent to free the small tavern operator from the hold of the machine industry and make those operators of alcoholic beverage establishments more independent. We are therefore of the

view that Sec. 27(1) of Art. 13.17, as we interpret it, is not in violation of the Constitution.

This Act also clearly prohibits any licensee under Art. 13.17 who engages in business as a seller, lessor or dealer in such coin-operated machines to have or hold any financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption.

Petitioners further contend that Art. 13.-02(2), which limits the division of gross receipts of coin-operated machines between an owner and a bailee or lessee constitutes an unconstitutional restraint upon petitioner's freedom of contract. It is fundamental that the right to enter into a contract is constitutionally guaranteed. That this right may be regulated, or in certain instances denied, by the Legislature in a proper use of the police power, is equally clear and settled. The question here is when and in what manner this power may be exercised to the extent of depriving citizens of the full enjoyment of their right to contract, and whether the Art. 13.02(2) under consideration is a valid expression of that power.

In Wylie v. Hays, 114 Tex. 46, 263 S.W. 563, 565 (1924), it was held:

" . . . if a law regulating contracts to be executed in the future has as its object that which may be clearly and reasonably considered by the Legislature to be the public welfare, prescribes means reasonably calculated and necessary to aid in accomplishing that object, and operates in a reasonable and not an arbitrary, capricious, or oppressive manner, it is within the police power, constitutes due process of law, and, consequently, is superior to the liberty of contract."

The U. S. Supreme Court has long held that "there can be no doubt that upon proper occasion and by appropriate measures the State may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells," and that "if the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied. . .," Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1933). The Court in *Nebbia* went on to say that "it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise."

We therefore conclude that the 50% limitation as established by Art. 13.-02(2) is not an unreasonable restraint on freedom to contract in that the purpose of the provision is to curb unrestrained competition for machine locations, a reasonable exercise of power. Further, the provision is neither arbitrary, nor oppressive in its application, as both machine owner and lessee share equally in the proceeds. We agree with the court of civil appeals that Art. 13.02(2) is not in violation of the Constitution.

We hold that Petitioners Thompson, Flores, Zulaica, Harrison and others similarly situated whose distinctive business is that of selling and serving alcoholic beverages for on-premises consumption, and whose ownership and use of coin-operated machines are purely incidental to that business, are not required to obtain a license under Sec. 8(1) of Article 13.17. We further hold that Article 13.02(2) is a valid regulation of contracts between owners and bailees or lessees of coin-operated machines.

The judgment of the trial court holding that Petitioners Thompson, Flores, Zulaica and Harrison are required to be licensed under the terms of Art. 13.17, and to pay the license fee required; and the holding declaring Art. 13.02 to be contrary to the Constitution of the State of Texas is reversed; the order of the trial court permanently enjoining the Comptroller of Public

Accounts and the Attorney General and their successors in office from attempting to enforce the provisions of subsection (1) of section 27 of Article 13.17, as interpreted by the Attorney General, is affirmed. The judgment of the court of civil appeals is affirmed in part and reversed and rendered in part.

POPE, J., dissenting.

POPE, Justice (dissenting).

I respectfully dissent. Article 13.01, Tex.Tax.-Gen.Ann. (1959), of the coin-machine statute, defines the word "owner." It states:

(1) The term "owner" means any person, individual, firm, company, association or corporation owning or having the care, control, management or possession of any "coin-operated machine" in this State.

Section 8(1) of Article 13.17, Tex.Tax.-Gen.Ann. (1969), provides: "No person shall engage in business to . . . own . . . a music coin-operated machine or a skill or pleasure coin-operated machine without a license issued under this Article." The same section then excepts corporations or associations organized exclusively for religious, charitable, educational, or benevolent purposes; those who own such a machine for personal use and amusement in their private residence; and any person subject to regulation by the Railroad Commission of Texas who transports or stores such machines not owned by him and in the due course of business.

Subsequent to the enactment of the original coin-machine statutes, the Legislature enacted a provision to exempt an owner who, on the effective date of the Act, owned a single machine which was owned for business purposes. The exemption was from the tax but not from the requirement that the owner be licensed. This exemption is found in Section 1(a) of Article 13.17 of the taxation statutes:

Sec. 1(a) Notwithstanding any language herein contained to the contrary, no provision herein shall be construed to require a fee for a general business license for an individual who, on the effective date of this Act only owns a single place of business and owns a music or skill or pleasure coin-operated machine in such place of business.

The quoted section reveals that the Legislature recognized the need for an exemption from taxation of the limited or incidental use of a single coin-operated machine. Neither that section nor any other section, however, affords an exemption to the owner of one machine from the licensing requirements. The Legislature recognized that one's use of a coin machine may be slight or incidental, and it has said that this means the ownership of one place of business and *a* coin-operated machine. It then exempts such owner from the tax but not a license.

This legislation arose out of Legislative investigations of the control of businesses by persons engaged in some phases of the coin-machine business. The Legislature determined that this control over permittees in the liquor business should be broken by requiring the licensing of all owners of coin machines and by prohibiting one's possessing both a liquor license and a coin-machine license. The majority decision of the court has held that a coin-machine owner need not be licensed if his coin-machine operation is merely incidental to his other business of retail sales of alcoholic beverages. This was not the intent of the Legislature. The Legislature rather carefully spelled out all exemptions from licensing but it did not draw the uncertain distinction between principal and incidental businesses.

The line which this court has drawn to exempt one from licensing is too vague to permit the law's enforcement. Does an "incidental" coin-machine business arise when one owns twenty taverns in each of which is one coin machine? What about

an owner who has three taverns and six machines? Will the "incidental" nature of coin-machine operation be determined by the comparative revenue derived from each? In the case of the very large and active tavern, the business from each line of endeavor may be great, but one or the other may be the greater. In the case of the small tavern with a single machine, when each shows a small profit, which one is incidental when the revenue from both is essential to the continuance of the business? The rule announced by this court will require an audit of the books and records of every establishment in which even one coin machine is located.

As a matter of statutory construction, I have problems in reading into the statute the court's exception. I would, therefore, approve the construction of the statute and the holding of the court of civil appeals.