# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00652-CV

**Marble Falls Independent School District, Appellant**

**v.**

**Eddie Shell, on behalf of his minor children, Morgan Shell and Alex Shell, Appellee**

---

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 21904, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING

---

**&**

## NO. 03-02-00693-CV

**In re Marble Falls Independent School District**

---

### ORIGINAL PROCEEDING FROM BURNET COUNTY

---

## M E M O R A N D U M   O P I N I O N

Marble Falls Independent School District (Marble Falls), as both relator and appellant, filed

a petition for writ of mandamus and an interlocutory appeal challenging the trial court=s grant of a temporary

injunction in favor of appellee and real party in interest, Eddie Shell, on behalf of his minor children, Morgan Shell and Alex Shell (AShell@). *See* Tex. Gov=t Code Ann. ' 22.221(b) (West Supp. 2003); Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(4) (West Supp. 2003). Shell challenged the Marble Falls mandatory extracurricular activity drug-testing policy as a violation of the Texas Constitution=s guarantees of religious freedom, privacy, and due process. *See* Tex. Const. art. I, '' 6, 9, 19. Because the trial court granted a temporary injunction before affording Marble Falls an opportunity to present its defense, Marble Falls petitioned for writ of mandamus. Marble Falls also brought an interlocutory appeal, asserting that Shell failed to satisfy the requisite burden of proof. *See* Tex. R. App. P. 28.1. Because Shell failed to prove a probable right to recover, we will reverse the trial court=s decision and dissolve the temporary injunction.

## BACKGROUND AND PROCEDURE

In August 2002, Marble Falls passed a policy for the 2002-2003 school year requiring the drug testing of all junior high and high school students who participate in extracurricular activities. The policy lists a number of substances for which students can be tested, including alcohol, barbiturates, cocaine, and steroids. Every junior high and high school student participating in extracurricular activities is to be tested twice a year and will be subject to additional random testing. An independent testing laboratory is to analyze a urine, hair, or saliva sample submitted by each student. If a sample tests positive, the student will be suspended from participation in extracurricular activities. The length of the suspensionCvarying from three weeks to permanent suspensionCwill depend on the number of times a student has tested positive.

2

Shell, believing that the Marble Falls drug policy violated his children=s rights, filed an original petition for a temporary restraining order, temporary injunction, permanent injunction, and damages. Shell sought to enjoin Marble Falls from enforcing its drug-testing policy with respect to Alex and Morgan Shell, both of whom are students in the Marble Falls Independent School District. Shell argues that the Marble Falls drug policy, which allows for the testing of alcohol consumption, violates his children=s religious freedom, privacy rights, and due process rights under the Texas Constitution because his children consume wine during religious observances of their Jewish faith. *See* Tex. Const. art. I, '' 6, 9, 19. According to Shell, the policy would, in effect, make his children=s participation in religious observances a ground for disallowing their participation in extracurricular activities at school.

At the temporary injunction hearing, before Marble Falls cross-examined Shell=s second witness, the parties agreed to bifurcate the witness=s testimony in order to accommodate each party=s out-of-town expert witness. Shell then called his expert. During cross-examination of Shell=s expert by Marble Falls, the trial court judge stated he was going to grant the temporary injunction.

In its petition for writ of mandamus, Marble Falls argues that the trial court abused its discretion when it: (1) failed to allow Marble Falls an opportunity to cross-examine Shell=s witnesses; (2) issued a temporary injunction before Shell rested his case; and (3) issued a temporary injunction prior to affording Marble Falls the opportunity to present its case-in-chief. Shell responds that the temporary injunction was properly granted because: (1) there was a viable cause of action based upon a threat of imminent and irreparable injury whereby a probable right to recover could be had; and (2) Marble Falls was allowed proper development of its case.

3

In this interlocutory appeal, Marble Falls argues that the trial court erred in granting the temporary injunction because: (1) the trial court abused its discretion in failing to afford Marble Falls the opportunity to call witnesses, submit evidence, and cross-examine all of Shell=s witnesses; and (2) Shell failed to demonstrate either a probable right to recover or a probable injury.

## DISCUSSION

### *Standard of Review*

A temporary injunction serves to preserve the status quo between the parties pending a trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Synergy Center, Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.CAustin 2001, no pet.). In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *Synergy Center, Ltd.*, 63 S.W.3d at 564; *Center for Econ. Justice v. American Ins. Ass=n*, 39 S.W.3d 337, 343 (Tex. App.CAustin 2001, no pet.). The decision to grant or deny the injunction lies within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Synergy Center, Ltd.*, 63 S.W.3d at 564. When considering the propriety of a temporary injunction, this Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Synergy Center, Ltd.*, 63 S.W.3d at 564. Abuse of discretion exists when the court misapplies the law to established facts or when it concludes that the applicant has demonstrated a probable injury or a probable right to recover and the conclusion is not reasonably supported by evidence. *Reagan Nat=l Advert. v. Vanderhoof Family Trust*, 82 S.W.3d 366,

370 (Tex. App.CAustin 2002, no pet.). If the claimant cannot present a valid legal theory, based on the claimant=s allegations, to support a probable right to recover, a temporary injunction will be improper. *See Tenet Health Ltd. v. Zamora*, 13 S.W.3d 464, 472 (Tex. App.CCorpus Christi 2000, pet. dism=d w.o.j.).

**1.    Probable Right to Recover**

To establish the right to the issuance of a temporary injunction, the applicant must show a probable right to recover at final trial and probable injury in the interim; the applicant is not required to establish that he or she will finally prevail in the litigation. *Transport Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 552 (Tex. 1953); *Amalgamated Acme Affiliates, Inc. v. Morton*, 33 S.W.3d 387, 392 (Tex. App.CAustin 2000, no pet.). Shell=s original petition includes claims brought under the Texas Constitution for violation of religious freedom, due process, and privacy rights. We will address each claim in turn.

*A.   Religious Freedom*

Shell argues that the Marble Falls drug policy violates Alex and Morgan Shell=s freedom of worship under the Texas Constitution. Tex. Const. art. I, ' 6.[1] The Shell children, as part of their Jewish

---

[1]    Article I, Section 6 of the Texas Constitution states:

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of

faith, occasionally consume alcohol. Because alcohol is a drug eligible for testing under the Marble Falls drug-testing policy, Shell claims that his children could be punishedCby way of suspension from participation in extracurricular activitiesCdue to their religious belief and practice.

Shell has presented no authority for the proposition that the Texas Constitution affords greater protection of religion than does the First Amendment to the United States Constitution. Absent such a showing, we may assume, without deciding, that the state and federal free exercise guarantees are coextensive with respect to Shell=s particular claims. *See Tilton v. Marshall*, 925 S.W.2d 672, 677 n.6 (Tex. 1996).

The United States Supreme Court has held that the right of free exercise of religion does not relieve an individual of the obligation to comply with a neutral law of general applicability on the ground that the law proscribes, or requires, conduct that is contrary to the individual=s religious practice, so long as the law does not violate other constitutional provisions. *Employment Div., Dep=t of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). Interpreting *Smith*, Texas courts have stated that religious freedoms are not

conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

Tex. Const. art. I, ' 6.

implicated by neutral laws governing activities the government has the right to regulate merely because some religious groups may be disproportionately affected. *Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996); *Mauldin v. Texas State Bd. of Plumbing Exam=rs*, 94 S.W.3d 867, 872 (Tex. App.CAustin 2002, no pet.).

The Marble Falls drug policy applies to every junior high and high school student participating in extracurricular activities. Although some religious groups or practices *could* be affected disproportionately, the policy is generally applicable and facially neutral with respect to religion. Therefore, under the standard articulated in *Smith*, we hold that the Marble Falls drug policy does not constitute a violation of religious freedom under the Texas Constitution. *See Smith*, 494 U.S. at 879; *Ramos*, 934 S.W.2d at 367; *Mauldin*, 94 S.W.3d at 872. However, we must still determine whether the Marble Falls drug policy fails a rational relationship analysis or violates other constitutionally protected rights.

### B. Due Process

Shell argues that the Marble Falls policy violates his children=s due process rights under Article I, Section 19 of The Texas Constitution.[2] Under both the federal and Texas due process clauses,[3] a law that does not affect fundamental rights or interests is valid if it bears a rational relationship to a legitimate state interest. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 491 (1955); *Texas Workers=Comp. Comm=n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995).

---

[2] Article I, Section 19 of the Texas Constitution states:

No citizen of this State shall be deprived of life, liberty, property, privileges or

**7**

The Texas Supreme Court has repeatedly held that participation in extracurricular activities

is not a fundamental right. *In re University Interscholastic League*, 20 S.W.3d 690, 692 (Tex. 2000)

---

immunities, or in any manner disfranchised, except by the due course of the law of the
land.

Tex. Const. art. I, ' 19.

[3] Texas courts have not been consistent in articulating a standard of review under the Texas due course clause. *Texas Workers= Comp. Comm=n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995). Texas courts have sometimes indicated that section 19 provides an identical guarantee to its federal due process counterpart. *See Mellinger v. City of Houston*, 3 S.W. 249, 252-53 (Tex. 1887); *Lindsay v. Papageorgiou*, 751 S.W.2d 544, 550 (Tex. App.CHouston [1st Dist.] 1988, writ denied). On other occasions, however, the Texas Supreme Court has attempted to articulate its own independent due process standard. *E.g.*, *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140-41 (Tex. 1977); *Thompson v. Calvert*, 489 S.W.2d 95, 99 (Tex. 1972); *State v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957). Some Texas courts have characterized the approach in these cases as more rigorous than the federal standard. *E.g.*, *Yorko v. State*, 681 S.W.2d 633, 636 (Tex. App.CHouston [14th Dist.] 1984), *aff=d*, 690 S.W.2d 260 (Tex. Crim. App. 1985). In the end, however, a law that does not affect fundamental rights or interests is valid if it bears a rational relationship to a legitimate state interest. *See Garcia*, 893 S.W.2d at 525.

8

(right to participate in extracurricular activities not a fundamental right); *Eanes Indep. Sch. Dist. v. Logue*, 712 S.W.2d 741, 742 (Tex. 1986) (due process strictures do not apply because right to play baseball not fundamental right); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560 (Tex. 1985) (student=s right to participate in extracurricular activities *per se* does not rise to level of fundamental right under Texas Constitution). Because participation in extracurricular activities is not a fundamental right, the Marble Falls drug policy is valid if it bears a rational relationship to a legitimate state interest.

The United States Supreme Court dealt with a similar drug-testing policy in *Board of Education v. Earls*, 536 U.S. 822, 122 S. Ct. 2559 (2002). Like the Marble Falls drug policy, the policy in *Earls* required all middle school and high school students to consent to drug testing in order to participate in any extracurricular activity. *Earls*, 536 U.S. at *___, 122 S. Ct. at 2562. The court found that the school district had a legitimate interest in protecting the safety and health of its students, *id*., 536 U.S. at *___, 122 S. Ct. at 2569, and that the need to prevent and deter the substantial harm of childhood drug use provided the necessary immediacy for a school testing policy, even when there was no demonstration of a drug abuse problem. *Id.*, 536 U.S. at *___, 122 S. Ct. at 2567-68. The court found that testing students who participate in extracurricular activities was a reasonably effective means of addressing the school district=s legitimate concerns in preventing, deterring, and detecting drug use. *Id.*, 536 U.S. at *___, 122 S. Ct. at 2569.

The Marble Falls drug policy is substantially similar to the policy in *Earls*. The three objectives listed in the Marble Falls policy are: (1) to provide a deterrent to drug use for students who participate in extracurricular activities; (2) to provide a drug education program for those students who test

**9**

positive or are at risk for drug use; and (3) to ensure the health and safety of students who participate in extracurricular activities. Because the Marble Falls policy allows the student to submit a urine, hair, or saliva sample, it might even be characterized as less intrusive than the policy in *Earls*, which mandated that all students provide a urine sample. *See Earls*, 536 U.S. at *___, 122 S. Ct. at 2566. The Marble Falls policy also provides for confidentiality of test results and allows only the student, the student=s parent or guardian, the sponsor of the extracurricular activity, the campus principal, and the drug program administrator to know the test results. Furthermore, under the policy, all test results are to be destroyed when the student no longer has extracurricular eligibility. Not only are the stated objectives of the Marble Falls policy legitimate, but the drug-testing program, as described in the policy, is rationally related to achieving the stated objectives. We therefore conclude that Shell has failed to present sufficient evidence that the Marble Falls policy violates the due process provisions of either the Texas or United States Constitutions.

### C. *Violation of Right to Privacy*

Shell specifically alleges that the Marble Falls drug policy violates his children=s privacy rights by subjecting them to an unlawful search and seizure under the Texas Constitution. Tex. Const. art. I, ' 9.[4] As with his claim of violation of religious freedom, Shell has presented no authority for the proposition

---

[4] Article I, Section 9 of the Texas Constitution states:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

that Article I, Section 9 of the Texas Constitution affords greater protection than does the Fourth Amendment to the U.S. Constitution. *See Ramos v. State*, 934 S.W.2d 358, 362 n.5 (Tex. Crim. App. 1996) (burden on appellant to demonstrate that Texas Constitution Article I, Section 9 offers greater protection than U.S. Constitution). Accordingly, our analysis is consistent with an analysis of the protections afforded under the Fourth Amendment to the U.S. Constitution—which is substantially similar to Article I, Section 9 of the Texas Constitution—as well as consistent with the Texas Supreme Court=s interpretation of the general right to privacy under the Texas Constitution.

Shell generally alleges that the Marble Falls drug policy violates his children=s right to privacy as granted by the Texas Constitution. The Texas Supreme Court has held that, while the Texas

---

Tex. Const. art. I, ' 9. This language is substantially the same as that found in the Fourth Amendment to the U.S. Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Constitution contains no express guarantee of a right to privacy, it contains several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected Azones of privacy.@ *Texas State Employees Union v. Texas Dept. of Mental Health and Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987) (construing Tex. Const., art. I, '' 6, 8, 9, 10, 25). Each of the cited provisions gives rise to a concomitant zone of privacy. *Texas State Employees Union*, 746 S.W.2d at 205 (citing *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965)). The Texas Constitution protects personal privacy from unreasonable intrusion, and this right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means. *Id.*

We can dispose of Shell=s specific claim under Article I, Section 9 of the Texas Constitution and his general privacy rights claim through the same analysis. The United States Supreme Court, in *Board of Education v. Earls*, 536 U.S. 822, 122 S. Ct. 2559 (2002), addressed the issue of students=privacy interests in school:

> A student=s privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety. . . . Securing order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults.

*Earls*, 536 U.S. at *___, 122 S. Ct. at 2565 (citations omitted). The drug policy in *Earls* required students to submit a urine sample. Given the Aminimally intrusive nature of the sample collection and the limited uses to which the test results [would be] put,@ the Supreme Court concluded that any invasion of

**12**

students= privacy was not significant, especially since students who voluntarily choose to participate in extracurricular activities have a limited expectation of privacy. *Id.*, 536 U.S. at *___, 122 S. Ct. at 2566-67 (citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 657-58 (1995)). Furthermore, the United States Supreme Court declined to impose a requirement of individualized suspicion on schools desiring to implement drug policies. *Id.*, 536 U.S. at *___, 122 S. Ct. at 2568. The court also reiterated that reasonableness under the Fourth Amendment does not require employing the least intrusive means, because Athe logic of such elaborate less-restrictive alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers.@ *Id.*, 536 U.S. at *___, 122 S. Ct. at 2569 (citations omitted).

We have already held that the Marble Falls drug policy is rationally related to a legitimate state interest. Because the Marble Falls policy allows for submission of a urine, hair, or saliva sample, limits the purposes for which test results will be used, and protects the confidentiality of results, we hold that the policy is only minimally intrusive on students= already reduced expectations of privacy. Therefore, it does not constitute an unreasonable intrusion on the right to personal privacy. Accordingly, we hold that Shell has failed to present sufficient evidence that the Marble Falls policy violates either the Texas or United States Constitutions.

## CONCLUSION

Because Shell=s allegations are legally insufficient to support his claim of constitutional infirmities, Shell has failed to establish a probable right to recover. Therefore, it was an abuse of discretion

**13**

for the trial court to grant the temporary injunction. Thus, we reverse the judgment of the district court and dissolve the temporary injunction. Having rendered judgment in favor of Marble Falls, we dismiss the petition for writ of mandamus as moot.


                                              Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Reversed and Rendered

Filed:   April 3, 2003