Opinion delivered March 2, 1889.

## No. 2578.

## WILLIAM CHAPPELL *v.* THE STATE.

1. EXHIBITING A GAMING TABLE—EVIDENCE.—Whether or not the table
   on which the game was exhibited was made specifically for gaming pur-
   poses can not, ordinarily, affect the issue in a prosecution for exhibit-
   ing or keeping a gaming table for the purpose of gaming, it being
   "rather from the character of the playing, or the game which is played,
   that it (the table) receives its specific designation." Another test is
   that it is any table on which any game is played "which in common

language is said to be played, dealt, kept or exhibited." The characteristics of a gaming table or bank, as correctly declared in Stearnes's case, 21 Texas, 693, are: "1. It is a game. 2. It has a keeper, dealer or exhibitor. 3. It is based on the principle of the one against the many—the keeper, dealer or exhibitor against the betters, directly or indirectly. 4. It must be exhibited for the purpose of obtaining betters."

SAME—"CRAPS"—CASE STATED—This indictment charges that the appellant * * * "did unlawfully keep for the purpose of gaming a gaming table used for gaming, to wit: for playing a game with dice, commonly called "craps.'" It was proved on the trial that "craps is played by one man taking two dice in his hand and throwing them on the table; and the man who throws bets on seven or eleven to win, and the other party bets against him. First one and then another will throw the dice. The game can be played on any flat surface." The same witness testified that he did not know that the accused had any interest in the saloon in which the game was played or in the table on which it was played; that he only knew "the defendant held the bets and received five cents for each two throws that were thrown." *Held*, that the proof does not support the allegation in the indictment. The table was in no way essential to the game, which could have been played on any flat surface; the game included no keeper or exhibitor, and was played only by the parties who participated in the throwing of the dice.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. C. L. Cleveland.

This conviction was for exhibiting a gaming table, and the penalty assessed against the appellant was a fine of twenty-five dollars, and confinement in the county jail for ten days.

The opinion sets out the substance of the proof for the State, except that the testimony inculpated the defendant as the man who held the money bet by the crap throwers, and received the table fees of five cents for every two throws.

Charles Jessup testified, for the defense, that he was the exclusive owner and proprietor of the saloon in which the game was played, and of the table on which it was played. Defendant was his employe, had no interest whatever in the saloon or table, and, in receiving the table fees for the game played, acted under and by the orders of the witness, and for the witness.

*Frank M. Spencer,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

White, Presiding Judge. It is charged in the indictment that the defendant, "in the said county of Galveston, in the State of Texas, with force and arms then and there unlawfully did keep, for the purpose of gaming, a gaming table used for gaming, to wit, for playing a game with dice commonly called craps," etc.

As shown by the evidence, "the game of craps is played by one man taking two dice in his hand and throwing them on the table, and the man who throws bets on seven and eleven to win, and the other party bets against him; first one and then another will throw the dice. *The game can be played on any flat surface.*" The witness further said: "Don't know that the defendant had any interest in the saloon (in which the playing took place), or table on which the playing took place. I only know that he held the bets, and received five cents for each two throws that were thrown."

Our statute with regard to keeping or exhibiting a table or bank provides that, "if any person shall keep or exhibit for the purpose of gaming any gaming table or bank of any name or description whatever, or any table or bank used for gaming which has no name," etc., he shall be punished, etc. (Penal Code, art. 358.) With regard to the character of "table or bank," as used in article 358, it is expressly declared that "it being intended by the foregoing article to include every species of gaming device known by the name of table or bank of every kind whatever, this provision shall be construed to include any and all games which in common language are said to be *played, dealt, kept or exhibited.*" (Penal Code, art. 359.) Article 360 enumerates certain games which are specifically declared to be included, but further provides that "the enumeration of these games specially shall not exclude any other properly within the meaning of the two preceding articles." And article 361 provides that "in any indictment or information for the class of offenses named in the three preceeding articles it is sufficient to that the person accused kept a table or bank for gaming, or state exhibited a table or bank for gaming, without giving the name or description thereof, and without stating that the table or bank or gaming device was without any name, or that the name was unknown."

In the early case of Estes v. The State, 10 Texas, 300, it was in proof that defendant bet at a game called "rondo," played upon a billiard table. The court say: "We do not understand

that it is litterally the table or structure, whatever that may be, on which the game is played that gives the character and designation of a gaming table; but it is rather from the char-ter of the playing, or the game which is played, that it receives its specific designation."

In the case of Stearnes v. The State, 21 Texas, 693, it was held that "Grand Raffle," as described in that case, was a gaming table exhibited for gaming. It was further said in that case that "it is difficult to imagine any species of table or bank, or gaming device resembling either, that is kept for gaming, that would not be included. Parties are liable to be misled by the words 'table and bank,' by attributing a meaning too restricted and literal." But in that case the leading elements characterizing a gaming table or bank are deduced and declared to be: 1. It is a game. 2. It has a keeper, dealer, or exhibitor. 3. It is based on the principle of one against the many—the keeper, dealer or exhibtor against the betters directly or indi-rectly. 4. It must be exhibited, that is, displayed, for the pur-pose of obtaining betters. And the description of the game in that case, had all "the leading characteristics of a common gaming table or bank, viz.: one against the many—the exhib-itor with an interest in the game against the betters." There is no question in our minds but that the Stearnes case showed a case of exhibiting *a gaming table and bank.*

In Webb's case, 17 Texas Court of Appeals, 205, defendant was convicted upon a charge of unlawfully keeping and exhibiting "a bank for gaming purposes," the evidence showing that the game was fifteen ball pool, played upon a billiard or pool table, and in which game the loser was to pay for the drinks or cigars ordered from defendant's bar by those engaged in the game. It was held that the game proven was not *a bank* but a gaming table, and it was said "the statute uses the words gaming table *or* bank, evidently meaning two different things."

The question we have in the case before us is, do the facts in evidence support the allegation in the indictment that the de-fendant "kept for the purposes of gaming a gaming table?" It seems that the structure of the table—that is, whether it was made specifically for gaming purposes — can not ordinarily affect the question; "it is rather from the character of the playing or game which is played that it receives its specific designation." (Estes v. The State, supra.) Another test is any game which in common language is said to *be played,*

*dealt, kept or exhibited.* Is the game of "craps," as described above, one which in common language is said to be *played, dealt, kept or exhibited* by a dealer or keeper? We think clearly not. There is no dealer or exhibitor in it. The game is played by the parties throwing the dice, the participants in the game, without the intervention of any third or outside party. All the defendant did was to collect five cents for every two throws by the players, evidently, we think, as pay for the use of his dice, and not for table fees. It might, with equal propriety, be claimed that he charged and collected the five cents for the privilege granted of permitting the parties to play the craps in his saloon as that it was for permitting them to play it on his table, the table not being in any manner essential to the game, it being a game which could be "played upon any flat surface," as upon his bar counter or the floor of the saloon. The character of the game would not cause any table or place upon which it was played to be designated as "a craps table" or a gaming table. It could be played as well upon a rock or a smooth surface of the ground as upon a table. A table is not in fact one of the essential elements of the game as we understand it, nor does it in any manner enter into the contemplation of the game as one of its requisites.

This case is in no essential particular different from Whitney's case, 10 Texas Court of Appeals, 377, in which case it was held that the evidence did not support the allegation in the indictment. We are satisfied of the correctness of that decision as to the particular facts of that case, and do not believe that it substantially conflicts with any of the decisions of the Supreme Court or of this court, when the facts of each particular case are considered in reference to the points decided in them.

We are clearly of opinion that the evidence in this case does not sustain the charge in the indictment, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*