

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00185-CV

———————————————

THE CITY OF FORT WORTH AND DAVID COOKE, IN HIS OFFICIAL CAPACITY AS FORT WORTH CITY MANAGER, Appellants/Cross-Appellees

V.

STEPHANNIE LYNN RYLIE, TEXAS C&D AMUSEMENTS, INC., AND BRIAN AND LISA SCOTT D/B/A TSCA AND D/B/A RIVER BOTTOM PUB, Appellees/Cross-Appellants

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-276483-15

---

Before Walker, Gabriel, and Kerr, JJ.
Opinion by Justice Kerr

## OPINION

The Texas constitution directs the Legislature to "pass laws prohibiting lotteries." Tex. Const. art. III, § 47(a). As a consequence, the Legislature enacted chapter 47 of the Texas Penal Code, which prohibits most forms of gambling in Texas, including owning, manufacturing, transferring, and possessing "gambling devices." *See* Tex. Penal Code Ann. §§ 47.01(4), .06 (West 2011). "Gambling devices" are

> any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

*Id.* § 47.01(4). But so that Texans may experience such fun as maneuvering a mechanical claw barely onto the ear of a coveted stuffed Pikachu only to helplessly watch it drop, at the last moment, to rejoin its piled-up brethren, the penal code expressly excludes from the definition of "gambling device"

> any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

*Id.* § 47.01(4)(B). This exclusion is commonly known as the "fuzzy animal" exception. *See Fifty Six (56) Gambling Devices v. State*, No. 07-03-0132-CV, 2004 WL 635429, at *2 (Tex. App.—Amarillo 2004, no pet.) (op. on reh'g).

2

Relying on this exception—the breadth of which goes well beyond offering harmless amusement at Chuck E. Cheese's®—Stephannie Lynn Rylie, Texas C&D Amusements, Inc., and Brian and Lisa Scott d/b/a TSCA and d/b/a River Bottom Pub (collectively, the Operators) own, buy, sell, lease, maintain, transport, store, and exhibit electronic gaming machines commonly known as "eight-liners" at various Fort Worth locations.

Unhappy about the less-than-wholesome clientele attracted to playing eight-liners, the Fort Worth City Council passed two ordinances in late 2014 aimed at regulating these machines and the businesses that house them. In response, the Operators sued the City of Fort Worth and its city manager, seeking to have the ordinances declared invalid because (1) they are preempted by, or are in conflict with, state law—in particular, the Texas Occupations Code and the Alcoholic Beverage Code—and (2) they violate the Texas constitution's substantive-due-course-of-law provisions. The City counterclaimed seeking to have the fuzzy-animal exception declared unconstitutional.

After both sides moved for summary judgment, the trial court declared portions of the ordinances invalid because they conflict with state law, but denied the remaining requested relief. Both the City and the Operators have appealed. We will affirm in part and reverse and render in part.

# I.
## Background[1]

The Operators' eight-liner machines resemble slot machines and operate solely or at least predominately by chance. To start things off, a player inserts cash into the machine, and the machine records the corresponding number of credits. After the player chooses the number of credits he wants to play, the machine reduces the credits accordingly. The player then starts a random "spin" by pushing a button. Depending on the machine, either the spinning automatically stops or the player can stop the spinning by pressing a button. The player wins by matching electronic symbols in one of eight (or more) lines on the screen—three horizonal, three vertical, or two diagonal. For each win, the machine records the number of credits won.

When a player has had enough, the machine dispenses tickets or coupons corresponding to the number of credits the player has won, if any. Depending on the location, a player can redeem his tickets or coupons for a prize from a redemption book,[2] a prize from a redemption counter,[3] or the right of replay.[4]

---

[1]The facts of this case are largely undisputed. The parties agreed to and signed a "Statement of Undisputed Facts," which each of them used to support their summary-judgment motions and responses.

[2]A redemption book is a prize catalog that the Operators keep. If the player selects a prize from the book, the Operators deliver that prize to the location owner, who then gives it to the player.

[3]A redemption counter is an on-site display of prizes where a player can exchange tickets or coupons for a prize.

According to the City, businesses that operate eight-liner machines "can have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them, causing increased crime," and "have objectionable operational characteristics . . . contributing to urban blight and downgrading the quality of life in the adjacent area." In an effort to "minimize and to control these adverse effects and thereby protect the health, safety, and welfare of the citizenry," to "protect citizens from increased crime," to "deter the spread of urban blight," and to preserve "quality of life," property values, and the "character of surrounding neighborhoods," the Fort Worth City Council passed two ordinances in October 2014: Ordinance No. 21499-10-2014 (the Zoning Ordinance) and Ordinance No. 21500-10-2014 (the Licensing Ordinance).

Both ordinances regulate "amusement redemption machines" and "game rooms" within the City's limits. A "game room," as the ordinances define one, is "a building, facility or other place where one or more amusement redemption machines are present." With carve-outs not relevant here except to note that Chuck E. Cheese's- and Main Event-type businesses are unaffected, the ordinances define an "amusement redemption machine" as

> any electronic, electromechanical, or mechanical contrivance, including sweepstakes machines, designed, made, and adapted solely for bona fide

---

[4]The right of replay lets a player exchange credits won on a machine and play the same machine or a different machine at the same location for the credit value of his winnings. The City and the Operators agree that this replay right is a prize.

amusement purposes, and that by operation of chance or a combination of skill affords the user, in addition[] to any right of replay, an opportunity to receive exclusively non-cash merchandise prizes, toys, or novelties, or a representation of a value redeemable for those items and is in compliance with Section 47.01(4)(b) of the Texas Penal Code [the fuzzy-animal exception].

The parties agree that the Operators' machines are "amusement redemption machines."

Among other things, both ordinances place zoning restrictions on game rooms that confine them to industrial-zoned areas; prohibit them from operating within 1,000 feet of a residential district, church, school, hospital, or another game room; and limit the number of game rooms allowed on any lot or in any single building, structure, or strip center. And unless a game room is already licensed under the Texas Alcoholic Beverage Code for the sale, purchase, possession, or consumption of "alcoholic beverages" (as the code defines that term) the ordinances prohibit the sale, etc. of alcoholic beverages in such a location. Particular to the Licensing Ordinance, operators of game rooms and amusement-redemption machines must obtain a license from the City. That ordinance also imposes an inspection and license fee on game-room operators; levies an occupation tax on each amusement-redemption machine; allows the City to seal any amusement-redemption machine for which the occupation tax or license fee has not been paid; and authorizes the City to charge a fee to unseal the machine.

6

Soon after the City Council passed the ordinances, the Operators sued the City seeking a declaration that the Zoning and Licensing Ordinances (along with an associated fee schedule, Ordinance No. 21631-02-2015, which was passed several months later) are void because Texas Occupations Code chapter 2153—a statute governing the licensing, taxing, and regulation of (among other things) skill or pleasure coin-operated machines—preempts the ordinances completely or, alternatively, preempts them to the extent that chapter 2153 and the ordinances conflict. *See generally* Tex. Occ. Code Ann. §§ 2153.001–.453 (West 2012) ("Coin-Operated Machines"). The Operators also sought a declaration that the Texas Alcoholic Beverage Code preempts the ordinances' restrictions on the sale, purchase, possession, and consumption of alcohol.[5] *See* Tex. Alco. Bev. Code Ann. § 1.06 (West 2007) ("Code Exclusively Governs"), § 109.57 (West Supp. 2017) ("Application of Code; Other Jurisdictions"). The City counterclaimed seeking to have penal code section 47.01(4)(B)—the fuzzy-animal exception—declared unconstitutional, arguing that it violates article III, section 47 of the Texas constitution by allowing forbidden "lotteries." *See* Tex. Const. art. III, § 47; Tex. Penal Code Ann. § 47.01(4)(B).

Both sides moved for summary judgment as a matter of law on their respective declaratory-relief requests. The trial court granted the Operators' motion in part and denied it in part. In particular, the trial court determined that some of the ordinances'

---

[5]The Operators also asserted claims for injunctive relief and regulatory takings, which they later nonsuited.

7

zoning and sealing-fee provisions conflicted with and were preempted by occupations code chapter 2153. But the trial court denied the balance of the Operators' motion, including their claims that chapter 2153 *completely* preempts the ordinances, and that the alcoholic-beverage code preempts the ordinances' alcohol restrictions. The trial court also denied the City's summary-judgment motion on its counterclaim.

While the case was pending in the trial court, the Texas Supreme Court issued *Patel v. Texas Department of Licensing & Regulation*, in which the court set out the elements for an as-applied challenge to an economic-regulation statute under the Texas constitution's substantive-due-course-of-law requirement. *See* 469 S.W.3d 69, 87 (Tex. 2015); *see also* Tex. Const. art. I, § 19. Relying on *Patel*, the Operators supplemented their petition to include an as-applied challenge to the ordinances, alleging that they violate the Texas constitution's substantive-due-course-of-law provision and requesting a declaration that the ordinances are therefore invalid. *See* Tex. Const. art. I, § 19. After the Operators filed that supplement, the City successfully moved for summary judgment on no-evidence grounds.

The parties tried their competing claims for attorney's fees and costs to the bench. The trial court denied all attorney's-fees claims,[6] rendered a final judgment incorporating its summary-judgment rulings, and denied relief on the City's counterclaim. In this latter regard, the trial court also found "as a matter of law" that

---

[6]The parties agreed that they would each bear their own court costs. Neither side attacks the trial court's decision not to award attorney's fees.

penal code section 47.01(4)(B) is constitutional. Both sides have appealed from this judgment.

## II.
## The Operators' Preemption Claims and the City's Counterclaim

As noted, the trial court partially granted and partially denied the Operators' summary-judgment motion on their preemption claims and denied the City's counterclaim seeking to have the fuzzy-animal exception declared unconstitutional. In its posture as appellant, in two issues the City complains that the trial court erred by partially granting the Operators' motion and declaring that the occupation code's chapter 2153 partially preempts the ordinances. In their own first two issues, as cross-appellants, the Operators contend that the trial court erred by declaring that chapter 2153 does not *completely* preempt the ordinances and by determining that the alcoholic-beverage code does not in any way preempt the ordinances' alcohol restrictions. The Operators also argue that the trial court lacked subject-matter jurisdiction over the City's counterclaim because it did not present a justiciable controversy and thus that the trial court erred by entering any substantive holding related to that counterclaim rather than dismissing it for want of jurisdiction.

### A. Standards of review

We review a declaratory judgment decided by summary judgment under the same standards of review that govern summary judgments. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2015); *Twin Creeks Golf Grp., L.P. v. Sunset Ridge Owners*

9

*Ass'n, Inc.*, 537 S.W.3d 535, 539 (Tex. App.—Austin 2017, no pet.); *Stanton v. Forum Arlington Props., Ltd.*, No. 02-07-301-CV, 2009 WL 1099454, at *2 (Tex. App.—Fort Worth Apr. 23, 2009, no pet.) (mem. op.). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In doing so, we consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

The Operators' and the City's preemption-related issues involve statutory construction, which we also review de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). "In construing statutes our primary objective is to give effect to the Legislature's intent." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). The best expression of legislative intent is the plain meaning of a statute's text. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015). "If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic

aids.'" *Crosstex Energy Servs.*, 430 S.W.3d at 389 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). We therefore initially limit our statutory review to the text's plain meaning as "the sole expression of legislative intent unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." *Abutahoun*, 463 S.W.3d at 46 (citations omitted). "[W]hen interpreting a statute, '[t]he text is the alpha and the omega of the interpretative process.'" *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, No. 17-0146, 2018 WL 2372810, at *2 (Tex. May 25, 2018) (quoting *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

## B. The Occupations Code

Chapter 2153's stated purpose is "to provide comprehensive and uniform statewide regulation of . . . skill or pleasure coin-operated machines." Tex. Occ. Code Ann. § 2153.001. As they did below, the Operators claim in their first issue that this language evinces the Legislature's intent to exclusively regulate such machines, and that based on complete-preemption principles, the City's ordinances thus overstepped what a municipality may do. Although the trial court disagreed with the idea of wholesale preemption, it did apply conflict-preemption principles to declare that *certain* of the ordinance provisions conflict with and are therefore preempted by chapter 2153.

In their two issues, the City challenges the trial court's partial summary judgment in the Operators' favor, arguing that chapter 2153 does not even partly preempt the ordinances because chapter 2153 does not apply to the Operators' machines at all.[7] The City's position can be broken into four pieces: (1) the machines are not "skill or pleasure coin-operated machines" under the occupations code; (2) the eight-liner machines are lotteries, which the Texas constitution prohibits; (3) because the Texas constitution prohibits lotteries, the fuzzy-animal exception in penal code section 47.01(4)(B) is unconstitutional because it legalizes lotteries, and the Operators' machines, which they operate under that section, are therefore illegal; and (4) even if 47.01(4)(B) is constitutional, the eight-liner machines do not fall within the fuzzy-animal exception and are therefore gambling devices prohibited by the penal code.[8]

We take up the City's arguments first, addressing piece 1 separately, and then addressing the remaining pieces together in subsection B.2. We will then examine, in subsections B.3 and B.4, the Operators' argument challenging the trial court's jurisdiction over the City's counterclaim and their complete-preemption argument.

---

[7]That is, instead of attacking the trial court's discrete partial-preemption findings, the City is going all in on chapter 2153.

[8]Despite the City's protestations that the occupations code does not apply to the Operators' machines, the Licensing Ordinance states that the City's occupation tax levied on the machines is "specifically authorized by Texas Occupations Code § 2153.451."

*1. The Operators' machines are "skill or pleasure coin-operated machines."*

The occupations code defines "skill or pleasure coin-operated machine" as

any kind of coin-operated machine[9] that dispenses, or is used or is capable of being used to dispense or afford, amusement, skill, or pleasure or is operated for any purpose, other than for dispensing only merchandise, music, or service. The term:

> (A) includes a marble machine, marble table machine, marble shooting machine, miniature racetrack machine, miniature football machine, miniature golf machine, miniature bowling machine, billiard or pool game, or machine or device that dispenses merchandise or commodities or plays music in connection with or in addition to dispensing skill or pleasure; and
>
> (B) does not include an amusement machine designed exclusively for a child.

*Id.* § 2153.002(9).

The City argues that the Operators' machines are not "skill or pleasure coin-operated machines" because (1) they dispense tickets or coupons redeemable for prizes, which section 2153.002's plain language does not contemplate;[10] (2) the machines do not dispense merchandise or commodities; and (3) the machines are not

_____

[9]A "coin-operated machine" is "any kind of machine or device operated by or with a coin or other United States currency, metal slug, token, electronic card, or check, including a music or skill or pleasure coin-operated machine." Tex. Occ. Code Ann. § 2153.002(1). The City does not dispute that the Operators' machines are machines or devices "operated by or with a coin or other United States currency, metal slug, token, electronic card, or check." *Id.*

[10]The City also complains that such a construction would be "impermissibly inconsistent with the Penal Code." But as we explain below, we need not determine whether the Operators' machines violate the penal code.

the type of machines the Legislature listed as examples of "skill or pleasure coin-operated machines."

The definition of "skill or pleasure coin-operated machines" is quite broad—and certainly broad enough that we must disagree with the City's position that the Operators' machines are not covered: they are coin-operated, they offer amusement or pleasure, and they do not dispense only merchandise, music, or service. *See id.* Indeed, in their "Statement of Undisputed Facts," the parties agreed that the Operators' machines are "amusement redemption machines" under the ordinances; and as relevant to the City's argument here, both ordinances define "amusement redemption machines" as "any electronic, electromechanical, or mechanical contrivance, including sweepstake machines, *designed, made, and adapted solely for bona fide amusement purposes*." [Emphasis added.]

Furthermore, simply because the machines dispense tickets or coupons redeemable for prizes rather than the prizes themselves does not remove the eight-liners from the realm of "skill or pleasure coin-operated machines." The statute's definition does not exclude machines that dispense tickets or coupons, nor does the definition affirmatively require that a machine dispense merchandise or commodities to be considered a "skill or pleasure coin-operated machine." Rather, a "machine or device that dispenses merchandise or commodities . . . in connection with or in addition to dispensing skill or pleasure" is simply one among several examples of machines included in the term "skill or pleasure coin-operated machine." *Id.* The term

14

"includes" is one of "enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded." *See* Tex. Gov't Code Ann. § 311.005(13) (West 2013). We hold that the Operators' machines are "skill or pleasure coin-operated machines" as defined by the occupations code.

*2. Chapter 2153's plain language does not exempt allegedly illegal or unconstitutional machines from regulation.*

Chapter 2153 does not "authorize or permit the keeping, exhibition, operation, display, or maintenance of a machine, device, or table prohibited by the constitution of this state or the Penal Code." Tex. Occ. Code Ann. § 2153.003. Claiming that this language precludes applying chapter 2153 to illegal machines, that the Operators' machines are unconstitutional lotteries, and that the fuzzy-animal exception was an unlawful legislative attempt to do an end-run around that constitutional prohibition, the City argues that preemption does not come into play at all.[11] The City further argues that even if section 47.01(4)(B) is constitutional, the machines do not fall within that fuzzy-animal exclusion and are therefore gambling devices prohibited by the penal code.

Contrary to the City's assertions, section 2153.003's plain language does not exempt machines from regulation simply because the constitution or the penal code

---

[11]The City fails to explain how, if the State may not regulate an allegedly illegal machine, the City itself may nevertheless validly impose and enforce a comprehensive regulatory scheme on that same machine.

15

might prohibit them. Section 2153.003—entitled "Construction of Chapter Consistent With Other Law"—merely avoids any possible confusion about whether an unconstitutional or illegal device becomes de facto legitimate if chapter 2153 regulates it. It plainly does not. We can intuit this result from the following section—section 2153.004, entitled "Exempt Machines"—that lists the types of machines to which chapter 2153 does not apply: stamp-vending machines; service coin-operated machines; and, if subject to an occupation or gross-receipts tax, gas meters and machines that vend food, confections, beverages, merchandise, and cigarettes. *Id.* § 2153.004. All statutorily defined machines other than those excepted under section 2153.004 can be regulated, and the exceptions do not include machines prohibited by the Texas constitution or the penal code. *See id.* If the Legislature intended to exclude unconstitutional or illegal machines from regulation, it would and could have said so.

Because the machines are "skill or pleasure coin-operated machines" and because sections 2153.003 and 2153.004 do not exclude unconstitutional or illegal skill or pleasure coin-operated machines from regulation under chapter 2153, we need not address the City's remaining arguments against preemption. That is, whether the Operators' machines are unconstitutional lotteries, whether penal code section 47.01(4)(B) is constitutional, or whether the machines come under section 47.01(4)(B)'s fuzzy-animal exception fall away from our analysis because these issues are unnecessary to resolve the City's argument against preemption. *See* Tex. R. App. P. 47.1. In fact, we cannot analyze these arguments because we may not render advisory

16

opinions. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (stating that a Texas court lacks jurisdiction to issue an advisory opinion, "[t]he distinctive feature" of which is that it "decides an abstract question of law without binding the parties"); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (stating that "the Texas constitution does not afford courts jurisdiction to make advisory decisions or issue advisory opinions").

We therefore overrule the City's two issues.

*3. The trial court lacked subject-matter jurisdiction over the City's counterclaim concerning the fuzzy-animal exception's purported unconstitutionality.*

As noted, the City counterclaimed seeking to have section 47.01(4)(B) declared unconstitutional, arguing that it violates the Texas constitution's prohibition against lotteries. *See* Tex. Const. art. III, § 47; Tex. Penal Code Ann. § 47.01(4)(B). Such a declaration, in the City's view, would "obviate the need" to evaluate the Operators' preemption argument.[12] The City moved for summary judgment on its counterclaim, which the trial court denied because—as stated in the final judgment—it determined as a matter of law that section 47.01(4)(B) does not violate article III, section 47 of the Texas constitution.[13]

---

[12]See immediately preceding footnote.

[13]The City does not challenge the trial court's denying its summary-judgment motion on this claim or the denial of its counterclaim.

The Operators contend that because chapter 2153 applies to all nonexcluded skill or pleasure coin-operated machines—legal or illegal, constitutional or unconstitutional—the City's counterclaim does not present a justiciable controversy. Contending that the trial court therefore lacked subject-matter jurisdiction over the City's counterclaim, the Operators urge us to render judgment dismissing that counterclaim for want of jurisdiction rather than let stand any declaration about the fuzzy-animal exception's constitutionality.

Under the declaratory-judgments act, a person "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015). The act does not create or enlarge a trial court's jurisdiction; it is simply a procedural device for deciding cases that are within the court's jurisdiction. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011); *see Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (stating that the declaratory-judgments act is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power" that would permit rendering advisory opinions, which both the Texas and federal constitutions prohibit).

Subject-matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Accordingly, a

declaratory-judgment action is within the trial court's subject-matter jurisdiction when a justiciable controversy exists about the rights and status of the parties before the court for adjudication, and the declaration sought must actually resolve that controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). A "justiciable controversy" is a real and substantial controversy involving a genuine conflict of tangible interests and not just a theoretical dispute. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 270 (Tex. App.—Fort Worth 1998, no pet.) (stating that a justiciable controversy is a "real controversy between the parties that will be actually determined by the judicial declaration sought"). Without a justiciable controversy, a trial court must dismiss a case for lack of subject-matter jurisdiction. *Transp. Ins. Co. v. W.H. Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.).

As we have determined, we need not reach the issue of section 47.01(4)(B)'s constitutionality in order to resolve the preemption issue. We thus agree with the Operators that the City's counterclaim does not present a justiciable controversy. Here, the fuzzy-animal exception's constitutionality is merely a theoretical dispute, and no existing dispute between the parties will be resolved by the declaration the City seeks. In other words, because chapter 2153 (and the City's ordinances) apply to the Operators' machines regardless of whether they are illegal or unconstitutional, section 47.01(4)(B)'s constitutionality is irrelevant here. The trial court therefore lacked subject-matter jurisdiction over the City's declaratory-judgment counterclaim.

19

We now turn to the Operators' preemption-related issues involving the occupations code.

*4. The Occupations Code does not completely preempt the ordinances.*

The Operators argued in their summary-judgment motion that because chapter 2153's stated purpose is "to provide comprehensive and uniform statewide regulation of music and skill or pleasure coin-operated machines," chapter 2153 completely preempts the City's ordinances. Tex. Occ. Code Ann. § 2153.001. The trial court disagreed, finding that because section 2153.001 "does not preempt local regulation 'with unmistakable clarity,'" the ordinances were not completely preempted. In their first issue, the Operators argue that the trial court erred by denying them summary judgment on their complete-preemption claim.

The City of Fort Worth is a home-rule city, deriving its power from article XI, section 5 of the Texas constitution. *See* Tex. Const. art. XI, § 5; *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). As a home-rule city, the City has the full power of self-government and looks to the Legislature not for grants of power, but only for limits on its powers. *See S. Crushed Concrete*, 398 S.W.3d at 678; *Dallas Merch.'s and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993). But a home-rule city cannot enact an ordinance containing a provision inconsistent with Texas's constitution or general laws. *See* Tex. Const. art. XI, § 5(a) (mandating that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this

20

State"); *see also BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016); *Dallas Merch.'s*, 852 S.W.2d at 490–91. A home-rule city ordinance is unenforceable to the extent that it is inconsistent with a state statute preempting that particular subject matter. *BCCA Appeal Grp.*, 496 S.W.3d at 7; *Dallas Merch.'s*, 852 S.W.2d at 491.

The Legislature may preempt a subject matter normally within a home-rule city's broad powers only if it does so with "unmistakable clarity." *S. Crushed Concrete*, 398 S.W.3d at 678; *Dallas Merch.'s*, 852 S.W.2d at 491. Simply because the Legislature has enacted a law addressing some particular topic does not automatically result in complete preemption. *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) ("[T]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted."); *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex.), *cert. denied*, 459 U.S. 1087 (1982) (stating that "[t]he entry of the state into a field of legislation . . . does not automatically preempt that field from city regulation"). But local regulation is "acceptable" if it is "ancillary to and in harmony with the general scope and purpose of the state enactment." *Brookside Vill.*, 633 S.W.2d at 796. "Absent an express limitation, if the general law and local regulation can coexist peacefully without stepping on each other's toes, both will be given effect or the latter will be invalid only to the extent of any inconsistency." *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593 (Tex. 2018) (citing *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. 1927) ("Of course, a general law and a city ordinance will not be held repugnant to each other if

any other reasonable construction leaving both in effect can be reached. . . . [B]oth will be enforced if that be possible under any reasonable construction . . . .")). We look to see whether the Legislature expressed its preemptive intent through clear and unmistakable statutory language. *See BCCA Appeal Grp.*, 496 S.W.3d at 8.

The Operators assert that the section 2153.001 phrase "comprehensive and uniform statewide regulation" indicates a legislative intent to completely preempt any local regulation of coin-operated machines. As support, the Operators point to the Legislature's "elaborate mechanism" through which the state comptroller has broad regulatory authority to enforce the chapter's provisions over skill or pleasure coin-operated machines. *See generally* Tex. Occ. Code Ann. §§ 2153.051–.058, .301–.307, .351–.362. It is true that chapter 2153 includes extensive record-keeping requirements, business regulations, and licensing and registration requirements related to coin-operated machines, *see generally id.* §§ 2153.151–.258, and imposes an occupation tax "on each coin-operated machine that an owner exhibits[14] or displays, or permits to be exhibited or displayed in this state," *id.* § 2153.401. The chapter also expressly permits some local regulation of coin-operated machines: counties and municipalities

---

[14]Chapter 2153 does not explain what it means to "exhibit" a machine, but in this context it seems to be an archaic way of saying "display for the purpose of obtaining players." *See, e.g.*, *Choppell v. State*, 27 Tex. Ct. App. 310, 313–14, 11 S.W. 411, 412 (1889) (holding that a craps game did not fall within the statute outlawing keeping or exhibiting a "gaming table or bank," and noting that one element is that the gaming table or bank "must be exhibited,—that is, displayed for the purpose of obtaining betters").

can (1) impose an occupation tax on coin-operated machines as long as the tax rate does not exceed one-fourth of the rate that section 2153.401 imposes; (2) restrict the exhibition of coin-operated amusement machines within 300 feet of a church, school, or hospital; and (3) seal a coin-operated machine if a county or municipal occupation tax is not paid, and charge up to a $5 fee to release the sealed machine. *Id.* §§ 2153.451–.453.

As noted, home-rule cities like Fort Worth have the full power of self-government and look to the Legislature only for limits on that power. *See Dallas Merch.'s*, 852 S.W.2d at 490–91. And any limitation exists only when the statute speaks with "unmistakable clarity." *Id.* at 491. Here, the only limitations that chapter 2153 places on municipalities relate to occupation-tax rates, zoning, and release-fee amounts.[15] The Operators do not cite, nor have we found, any cases in which a Texas court has construed the phrase "comprehensive and uniform statewide regulation" (or similar language) to indicate, with unmistakable clarity, the Legislature's intent to preempt an entire subject matter.

Indeed, had the Legislature intended the State to exclusively regulate coin-operated machines, it could easily have said so, as it has done in other areas. *See, e.g.*, Tex. Alco. Bev. Code Ann. § 109.57(b) ("It is the intent of the legislature that this code *shall exclusively govern* the regulation of alcoholic beverages in this state, and that

---

[15]The trial court granted summary judgment on the Operators' claims that parts of the ordinances conflicted with chapter 2153's zoning and release-fee limitations.

except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code." (emphasis added));[16] Tex. Loc. Gov't Code Ann. § 143.1115(a) (West 2008) ("This section *provides the exclusive procedure* for determining whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment." (emphasis added)); *Dallas Merch's*, 852 S.W.2d at 491–92 ("The Legislature's intent is clearly expressed in section 109.57(b) of the TABC—the regulation of alcoholic beverages is exclusively governed by the provisions of the TABC unless otherwise provided. Section 109.57 clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold under most circumstances." (citation and footnote omitted)); *Tyra v. City of Houston*, 822 S.W.2d 626, 628 (Tex. 1991) ("By providing in [section 143.1115(a)] the 'exclusive procedure for determining whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties or assignment,' the legislature has withdrawn the City's authority to create its own procedures for that purpose.").

Similarly, the Legislature could have used other sorts of "express preemption" language establishing its intent to occupy a particular field. *See, e.g.*, Tex. Nat. Res. Code Ann. § 81.0523(c) (West Supp. 2017) (stating that subject to limited exceptions,

---

[16]As we make clear in the next section of this opinion, the alcoholic-beverage code completely preempts local regulation in a way that the occupations code does not.

24

"[t]he authority of a municipality or other political subdivision to regulate an oil and gas operation is *expressly preempted*" (emphasis added)). Or the Legislature could have said that chapter 2153 "supersedes" local regulation of coin-operated machines. *See id.* § 133.085(c) (West 2011) ("The provisions of this Act *supersede* any other municipal ordinance or county regulation that seeks to accomplish the same ends as set out herein." (emphasis added)).

Or, in yet another variation on how to signal complete preemption, the Legislature could have stated that cities are "prohibited" from passing any ordinances regulating coin-operated machines. *See* Tex. Health & Safety Code Ann. § 361.0961(a) (West 2016) (prohibiting local governments from adopting certain ordinances, rules, or regulations related to waste management); *Laredo Merchs.*, 550 S.W.3d at 593 ("In this case, the legislative intent in the Act to preempt local law is clear. [Section 361.0961(a)] states that '[a] local government or other political subdivision may not adopt' certain ordinances."); *cf.* Tex. Health & Safety Code Ann. § 382.113(b) (West 2016) ("An ordinance enacted by a municipality must be consistent with [the Texas Clean Air Act] and the [TCEQ]'s rules and orders and *may not make* unlawful a condition or act approved or authorized under this chapter or the commission's rules or orders." (emphasis added)); *S. Crushed Concrete*, 398 S.W.3d at 679 (holding that section 382.113(b)'s plain language demonstrated the legislature's clear intent to preempt ordinances that make unlawful an "act approved or authorized under . . . the [TCEQ]'s . . . orders").

But in enacting chapter 2153 of the occupations code, the Legislature did not use any of these signals, instead coming up with a "purpose" description that is unique to section 2153.001. Without more to guide us, we therefore conclude and hold that chapter 2153's stated purpose "to provide comprehensive and uniform statewide regulation of music and skill or pleasure coin-operated machines" does not indicate the Legislature's clear and unmistakable intent to wholly preempt local regulation of such machines. We overrule the Operators' first issue.

## C. The Alcoholic-Beverage Code

In their second issue, the Operators complain that the trial court erred by not agreeing that the alcoholic-beverage code preempts two ordinance provisions prohibiting the sale, possession, purchase, and consumption of alcohol in game rooms. The trial court denied the Operators summary judgment because the ordinances "do not impose additional restrictions on a premises required to have a license under TABC §§ 1.06, 109.57."

The alcoholic-beverage code provides that "[u]nless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by the provisions of this code." Tex. Alco. Bev. Code Ann. § 1.06. Section 109.57 states that the alcoholic-beverage code exclusively governs a city's ability to regulate alcoholic beverages except as the code permits. *See id.* § 109.57(b) ("It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages

26

in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code."); *accord Dallas Merch.'s*, 852 S.W.2d at 492 ("Section 109.57 clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold under most circumstances. Accordingly, we hold that to the extent of any conflict, the TABC preempts the Ordinance." (footnote omitted)). The Operators argue that these code provisions "clearly preempt" the City's alcoholic-beverage ordinances.

The Zoning Ordinance and the Licensing Ordinance both prohibit the "sale, purchase, possession, or consumption of any alcoholic beverages as defined by the Texas Alcoholic Beverage Code" in game rooms "unless the premises is licensed under the provisions of said code for the sale, purchase, or possession of alcoholic beverages."[17] But the alcoholic-beverage code permits cities to regulate alcoholic-

---

[17]Specifically, the Zoning Ordinance provides that "[t]he sale, purchase, possession[,] or consumption of any alcoholic beverages as defined by the Texas Alcoholic Beverage Code shall not be permitted unless the premises is licensed under the provisions of said code for the sale, purchase, or possession of alcoholic beverages." Similarly, the Licensing Ordinance states,

   A licensee hereunder shall not permit any of the following activities within the licensed premises:

      (a) The sale, purchase, possession[,] or consumption of any alcoholic beverages as defined by the Texas Alcoholic Beverage Code unless the premises is licensed under the provisions of said code for the sale, purchase, or possession of alcoholic beverages;

      . . . .

27

beverage sales only in limited circumstances. *See, e.g.*, Tex. Alco. Bev. Code Ann. § 109.31 (West 2007) (allowing cities to prohibit liquor sales in residential areas), § 109.32 (West 2007) (allowing cities to prohibit beer sales in residential areas and to regulate beer sales and "prescribe the hours when it may be sold, except the city . . . may not permit the sale of beer when its sale is prohibited by th[e] code"), § 109.33 (West 2007) (permitting a city to prohibit alcoholic-beverage sales within certain distances from schools, churches, and hospitals); § 109.331 (West Supp. 2017) (permitting a city to prohibit alcoholic-beverage sales within certain distances from day-care centers and child-care facilities).

As with sales-related regulations, the code allows cities to regulate the possession and consumption of alcoholic beverages only in narrow circumstances as well. *See id.* §§ 109.35, .36 (West Supp. 2017). Section 109.35 permits a city to prohibit open-container possession and public consumption of alcoholic beverages in "central business districts." *See id.* § 109.35(a). But within a "central business district," a city may not "prohibit the possession of an open container or the consumption of alcoholic beverages in motor vehicles, buildings not owned or controlled by the municipality, residential structures, or licensed premises located in the area of prohibition." *Id.* § 109.35(c). And "[i]n accordance with Section 1.06, [section 109.35] does not authorize municipal regulation of the possession of an open container or the public consumption of alcoholic beverages except as expressly provided by this section [109.35]." *Id.* § 109.35(c)(1). A city may also prohibit "the possession of an

28

open container or the consumption of an alcoholic beverage on a public street, public alley, or public sidewalk within 1,000 feet of the property line of a homeless shelter that is not located in a central business district or a substance abuse treatment center that is not located in a central business district." *Id.* § 109.36(b).

Pointing to a different part of the alcoholic-beverage code—section 61.01—the City maintains that the ordinances' alcoholic-beverage provisions do not conflict with the code but merely reinforce it by prohibiting alcohol sales in places not licensed under the code. *See id.* § 61.01 (West 2007) ("No person may . . . distribute or sell [beer], or possess it for the purpose of sale without having first obtained an appropriate license or permit as provided in this code."); *Dallas Merch.'s*, 852 S.W.2d at 492, 494 (holding that the code preempted a home-rule city ordinance regulating where alcoholic beverages could be sold to the extent the ordinance conflicted with the code); *Brookside Vill.*, 633 S.W.2d at 796 ("[L]ocal regulation, ancillary to and in harmony with the general scope and purpose of state enactment, is acceptable."). We disagree with the City's characterization.

Section 61.01 addresses only beer sales and possessing beer for the purpose of sale. But the ordinances here cover all alcoholic beverages as defined by the code,[18] not just beer, and regulate not only alcohol sales, but its purchase, consumption, and

_____

[18]The alcoholic-beverage code defines "alcoholic beverage" as "alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted." Tex. Alco. Bev. Code Ann. § 1.04(1) (West Supp. 2017).

possession. The alcoholic-beverage code makes clear that unless it specifically provides otherwise, the code's dominion over alcoholic beverages is exclusive. *See* Tex. Alco. Bev. Code Ann. §§ 1.06, 109.57(b). The City's ordinances attempt to prohibit the sale, purchase, possession, and consumption of alcoholic beverages in ways that are beyond the limited local regulation of alcoholic beverages that the code allows.[19] We thus hold that section 1, § 4.305(C)(6)(e) of the Zoning Ordinance and section 1, § 20-120(a) of the Licensing Ordinance conflict with, and are therefore preempted by, the alcoholic-beverage code. We sustain the Operators' second issue.

### III.
### The Operators' Substantive-Due-Course-of-Law Claim

The Operators sought a declaration that the ordinances are void because they violate the substantive-due-course-of-law protections of article I, section 19 of the Texas constitution. *See* Tex. Const. art. I, § 19. In this regard, the Operators alleged that, as applied to them, the ordinances' actual, real-world effect is not rationally related to the ordinances' interests or, alternatively, is so burdensome as to be

---

[19]As we noted, the alcoholic-beverage code allows cities to regulate beer sales. *See id.* § 109.32(a)(2). And, as the City points out, the code prohibits a person without the appropriate license or permit from selling beer or possessing it for the purpose of sale. *See id.* § 61.01. Because the City chose to regulate not just beer, but "alcoholic beverages as defined by the Texas Alcoholic Beverage Code," which includes far more than beer, we decline to sua sponte carve out any exception allowing the ordinances to apply only to beer sales and possession for sale because doing so would be rewriting the City's ordinances, which is not our place.

oppressive. *See Patel*, 469 S.W.3d at 87.[20] Without stating the grounds on which it relied, the trial court granted the City's no-evidence summary-judgment motion on this issue, which the Operators[21] challenge in their third issue.

The Texas constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land." Tex. Const. art. I, § 19; *see Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (stating that there is no meaningful distinction between "due process" and "due course of law"). But before any substantive- or procedural-due-process rights attach, a party must have a liberty or property interest that is entitled to constitutional protection. *Honors Acad., Inc. v. Tex. Educ. Agency*, No. 16-0519, 2018 WL 1975025, at *4 (Tex. Apr. 27, 2018); *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). "A constitutionally protected right must be a vested right, which is 'something more than a mere expectancy based upon an anticipated continuance of an existing law.'" *Klumb*,

---

[20]As the proponent of an as-applied challenge to an economic-regulation statute under article I, section 19's substantive-due-course-of-law protections, the Operators would have to prove that either (1) the ordinances' purposes could not arguably be rationally related to a legitimate governmental interest, or (2) when considered as a whole, the ordinances' actual, real-world effect as applied to them could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest. *See Patel*, 469 S.W.3d at 87.

[21]Because Texas C&D Amusements nonsuited its substantive-due-course-of-law claim, it is not one of the "Operators" in this final issue.

31

458 S.W.3d at 15 (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)).

In its summary-judgment motion, the City asserted that a plaintiff bringing a substantive-due-course-of-law claim must prove that he has a constitutionally protected liberty or property interest, and alleged that there was no evidence that the Operators have any constitutionally protected right. On appeal, the Operators agree that "the City is certainly correct that a plaintiff must show the existence of a 'constitutionally-protected right' in order to assert a claim for deprivation of that right." The Operators concede, moreover, that they have no vested property right.[22]

But, the Operators argue, under *Patel* a vested property right is unnecessary to challenge oppressive economic regulation. For the first time, in their reply brief, the Operators contend that the constitutionally protected right in this case is an economic-liberty interest—the right to work and to earn a living. *See, e.g.*, *Patel*, 469 S.W.3d at 110, 123 (Willett, J. concurring) (observing that the majority "recognizes that Texans possess a basic liberty under Article I, Section 19 to earn a living" and describing the economic-liberty interest before the court as an "[o]ccupational freedom, the right to earn a living as one chooses").

---

[22]At the summary-judgment hearing, the Operators' attorney admitted on the record that their summary-judgment evidence did not prove that they had a vested property right. On appeal, the Operators state that they are not asserting a property right as to their substantive-due-course-of-law claim.

In their pleadings before the trial court the Operators did not allege any constitutionally protected right. *Cf. id.* at 74 ("The Threaders alleged that the cosmetology statutes and administrative rules issued pursuant to those statutes . . . violated their constitutional right 'to earn an honest living in the occupation of one's choice free from unreasonable governmental interference.'"). Nor did they claim a liberty interest, much less the right to work and to earn a living, in response to the City's summary-judgment motion, which explicitly alleged the lack of any constitutionally protected right as a no-evidence ground. The Operators argued only that a vested property right was not required under *Patel.*

Because the Operators did not raise the liberty-interest argument in the trial court, we cannot consider the issue on appeal as grounds for reversal. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 211 n.1 (Tex. App.—Tyler 2009, no pet.) ("'Written motion, answer, or other response,' as applied to traditional motions for summary judgment, applies equally to no evidence motions for summary judgment." (citing *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 876 (Tex. App.—Fort Worth 2005, no pet.))); *Cook-Pizzi v. Van Waters & Rogers, Inc.*, 94 S.W.3d 636, 647 (Tex. App.—Amarillo 2002, pet. denied) (applying rule 166a(c) to no-evidence motions for summary judgment). Moreover, because the Operators did not raise their liberty-interest argument on appeal until their reply brief, we cannot

33

consider it. *See Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.) (stating, "[t]hat [appellant] could have but did not make such an argument in its opening brief does not allow it to do so for the first time in its reply brief," and thus holding that issue was waived and not properly before appellate court); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 754 n.16 (Tex. App.—Fort Worth 2008, pet. dism'd) (concluding that issue raised for the first time in a reply brief is not preserved for appeal). Accordingly, we overrule the Operators' third issue without addressing whether the ordinances' actual, real-world effect is not rationally related to those ordinances' interests or is not so burdensome as to be oppressive. *See* Tex. R. App. P. 47.1; *Patel*, 469 S.W.3d at 87; *cf. Mbogo v. City of Dallas*, No. 05-17-00879-CV, 2018 WL 3198398, at *8 (Tex. App.—Dallas June 29, 2018, pet. filed) (mem. op.) ("Hinga has failed to establish he has a vested property interest entitled to due process. Having reached this conclusion, we need not consider whether the City's ordinances were rationally related to a legitimate government interest or when considered as whole, whether the ordinances were so burdensome as to be oppressive."). We overrule the Operators' third issue.

## IV.
## Conclusion

Having concluded that the trial court lacked jurisdiction over the City's declaratory-judgment counterclaim, we reverse the portion of the judgment denying the City's declaratory-judgment counterclaim and render judgment dismissing it for

want of jurisdiction. Having sustained the Operator's second issue, we reverse the portion of the judgment denying the Operators' alcoholic-beverage-code preemption claim and render judgment declaring that the Texas Alcoholic Beverage Code preempts section 1, § 4.305(C)(6)(e) of the Zoning Ordinance and section 1, § 20-120(a) of the Licensing Ordinance. Having overruled the Operators' remaining issues and each of the City's issues, we affirm the rest of the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  October 4, 2018