# IN THE SUPREME COURT OF TEXAS

No. 18-1231

THE CITY OF FORT WORTH AND DAVID COOKE, IN HIS OFFICIAL CAPACITY AS FORT WORTH CITY MANAGER, PETITIONERS,

v.

STEPHANNIE LYNN RYLIE, TEXAS C&D AMUSEMENTS, INC., AND BRIAN AND LISA SCOTT D/B/A TSCA AND D/B/A RIVER BOTTOM PUB, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued January 28, 2020**

JUSTICE BOYD delivered the opinion of the Court.

The issue in this case is whether (and if so, to what extent) a state statute that regulates "coin-operated machines" preempts city ordinances that regulate "eight-liners" and the "game rooms" that offer them. We cannot reach that issue today, however, because the answer depends initially on whether the eight-liners at issue are constitutional and legal. The court of appeals did not address the constitutionality or legality of the eight-liners because it believed the question is irrelevant to the preemption issue. Because we disagree, we reverse the court of appeals' judgment and remand the case to that court so that it can decide in the first instance whether the eight-liners are constitutional and legal.

# I.
# Background

For as long as the State of Texas has been the State of Texas, its citizens have elected to constitutionally outlaw most types of "lotteries."[1] Contrary to the term's popular understanding, a "lottery" includes not just contests involving scratch-off tickets and numbered ping-pong balls, but a wide array of activities that involve, at a minimum, (1) the payment of "consideration" (2) for a "chance" (3) to win a "prize." *City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 698 (Tex. 1936).[2] Since its ratification in 1876, our current constitution has affirmatively required the legislature to "pass laws prohibiting" lotteries. TEX. CONST. art. III, § 47.[3]

---

[1] *See* TEX. CONST. OF 1876 art. III, § 47 ("The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."); TEX. CONST. OF 1869 art. III, § XXVII ("The Legislature shall not authorize any lottery, and shall prohibit the sale of lottery tickets."), art. XII, § XXXVI ("No lottery shall be authorized by this State; and the buying and selling of lottery tickets within this State is prohibited."); TEX. CONST. OF 1866 art. VII, § 17 ("No lottery shall be authorized by this State; and the buying or selling of lottery tickets within this State is prohibited."); TEX. CONST. OF 1861 art. VII, § 17 ("No lottery shall be authorized by this State; and the buying or selling of lottery tickets within this State is prohibited."); TEX. CONST. OF 1845 art. VII, § 17 ("No Lottery shall be authorized by this State; and the buying or selling of Lottery Tickets within this State, is prohibited.").

[2] *See* TEX. PENAL CODE § 47.01(7) ("'Lottery' means any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name."); *Randle v. State*, 42 Tex. 580, 585 (1875) (defining lottery as a "scheme for the distribution of prizes by chance"); *see also Fed. Commc'ns Comm'n v. Am. Broad. Co.*, 347 U.S. 284, 290 n.8 (1954) ("[W]hatever may be the factual differences between a 'lottery,' a 'gift enterprise,' and a 'similar scheme,' the traditional tests of chance, prize, and consideration are applicable to each."); *Queen v. State*, 246 S.W. 384, 386 (Tex. Crim. App. 1922) ("A slot machine is a lottery.").

[3] Beginning in 1980, Texans ratified a series of constitutional amendments to allow certain types of lotteries, including the state lottery and charitable bingo and raffles. *See* TEX. CONST. art. III, § 47(b), (c), (d), (e). The legislature must prohibit all lotteries the constitution does not expressly authorize. *Id.* § 47(a); *see generally Hardy v. State*, 102 S.W.3d 123, 130 (Tex. 2003) (discussing constitutional amendments regarding lotteries).

2

## A. Gambling and gambling devices

To fulfill its constitutional obligation, the legislature has enacted statutes making it a criminal offense to engage in or promote most forms of "gambling"[4] or to own, manufacture, transfer, or possess a "gambling device." TEX. PENAL CODE §§ 47.02–.06. The term "gambling device" includes "any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance." *Id.* § 47.01(4). This includes, as examples, electronic or mechanical versions of "bingo, keno, blackjack, lottery, roulette, [and] video poker." *Id.* § 47.01(4)(A).

## B. The fuzzy-animal exclusion

As technology developed in recent decades, the statutory prohibition against gambling devices presented a peculiar problem for increasingly popular "family entertainment centers."[5] These establishments offer electronic and mechanical games that at least arguably constitute lotteries or gambling devices: patrons pay consideration for the chance to win as many tickets as possible, with an eye toward the prize counter. Behind the prize counter lies a bounty of gadgets, toys, and stuffed animals (most of which are worth far less than the amount expended to win the

---

[4] "Gambling" generally refers to participation in lottery-type activities involving, at a minimum, consideration, chance, and a prize. *See generally* TEX. PENAL CODE §§ 47.01(1) (defining "bet"), .01(4) (defining "gambling device"), .02 (prohibiting "gambling"), .03 (prohibiting "gambling promotion").

[5] Texas is home to a number of these centers: Dave & Busters, founded and headquartered in Dallas; Main Event, headquartered in Plano; and Chuck E. Cheese, headquartered in Irving.

tickets) and a few big-ticket items (usually available only to those who win a rare jackpot or spend a few hundred hours playing Skee-Ball).

In 1993, the legislature made the policy decision to resolve this perceived problem by adopting what has become known as the "fuzzy-animal exclusion."[6] *See* Act of May 31, 1993, 73d Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3027–28 (amended 1995) (codified at TEX. PENAL CODE § 47.01(4)(B)). Under the fuzzy-animal exclusion, a machine that would otherwise constitute a "gambling device" is excluded from the definition if (1) it is used "solely for bona fide amusement purposes," (2) it rewards only "noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items," and (3) the reward for "a single play of the game or device" is worth no more than the lesser of $5 or ten times the cost of the single play. TEX. PENAL CODE § 47.01(4)(B).

## C. Eight-liners

Soon after the legislature adopted the fuzzy-animal exclusion, owners of machines known as "eight-liners" began taking the position that their machines fall within the exclusion's protection.[7] Eight-liners generally operate like a video slot machine: a patron pays to play the machine, which displays nine electronic symbols arranged in three columns and three rows; the machine records the payment as credits; and the player bets some or all of those credits by pushing a button to cause the three columns to start spinning. If the columns stop (either automatically or when the player pushes the button a second time) with three of the same symbols in one of eight

---

[6] *See, e.g.*, *Twenty-Nine (29) Gambling Devices v. State*, 110 S.W.3d 146, 148 (Tex. App.—Amarillo 2003, no pet.) (noting that section 47.01(4)(B) is "commonly called the 'fuzzy animal' exclusion").

[7] *See Hardy*, 102 S.W.3d at 125–26 (describing eight-liners and addressing whether they fall within the exclusion).

4

possible lines—three vertical, three horizontal, and two diagonal—the player wins a predetermined amount of additional credits. At that point, the player can either push the button to play again or end the game and withdraw a ticket or coupon representing the value of the player's remaining credits. The player can then exchange the coupon for a "prize"—much like the children at Chuck E. Cheese—or for a "right of replay," meaning credits to use on a different machine.

Community opposition to eight-liners and the "game rooms" that offer them led not only to arguments that the machines do not qualify under the fuzzy-animal exclusion, but also to arguments that the exclusion itself is unconstitutional because it authorizes lotteries—games involving consideration, chance, and a prize.[8] Because the constitution affirmatively requires the legislature to prohibit lotteries, the opponents argued, it necessarily prohibits the legislature from enacting an exclusion that allows them. A few years after the legislature adopted the fuzzy-animal exclusion, Texas Attorney General Dan Morales issued an opinion agreeing that the exclusion is unconstitutional "because it contravenes the Texas Constitution's proscription of 'lotteries.'" Tex. Att'y Gen. Op. No. DM-466, 1998 WL 78772, at *3 (Jan. 23, 1998). About ten years later, then-Attorney General Greg Abbott reaffirmed that conclusion. Tex. Att'y Gen. Op. No. GA-0527, 2007 WL 709285, at *3 n.6 (Mar. 6, 2007). We have never addressed that issue,[9] and the exclusion

---

[8] The Operators argue that although their eight-liners constitute "gambling devices" under the penal code (albeit protected by the fuzzy-animal exclusion), they are not lotteries under the constitution because a lottery must involve elements in addition to consideration, chance, and a prize, and their eight-liners do not involve those elements. According to the Operators, "while all lotteries are a form of gambling, not all forms of gambling are lotteries." For the reasons discussed, we do not address that issue here.

[9] A few Texas courts of appeals have addressed the issue to varying degrees, and have declined to find the exclusion unconstitutional. *See Owens v. State*, 19 S.W.3d 480, 481–84 (Tex. App.—Amarillo 2000, no pet.); *Tex. Alc. Bev. Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 656 (Tex. App.—Austin 1999, pet. dism'd w.o.j.); *Weaver v. Head*, 984 S.W.2d 744, 746–747 (Tex. App.—Texarkana 1999, no writ).

remains intact, giving rise to legal disputes over whether the exclusion covers particular variations of eight-liners.[10]

## D. Chapter 2153

Meanwhile, chapter 2153 of the Texas Occupations Code[11] "provide[s] comprehensive and uniform statewide regulation" of "skill or pleasure coin-operated machines." TEX. OCC. CODE § 2153.001.[12] Subject to certain exceptions, *see id.* §§ 2153.004–.008, chapter 2153 requires any person who manufactures, owns, buys, sells, rents, trades, maintains, transports, stores, or imports a skill or pleasure coin-operated machine to first obtain a license or registration from the comptroller, *id.* §§ 2153.151–.153, to pay an annual fee for the license or registration, *id.* §§ 2153.154, .157, to maintain detailed records regarding the machine, *id.* §§ 2153.201–.204, and to pay an annual occupations tax on each machine, *id.* § 2153.401. The chapter allows a county or municipality to impose an additional local tax on each machine, but only in an amount not greater than one-fourth of the state tax. *Id.* § 2153.451. It also allows them to impose zoning restrictions on places that "exhibit" the machines based on the property's "principal use," and specifically

---

[10] *See, e.g.*, *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 178 (Tex. 2013) (per curiam) (holding that eight-liners that "awarded tickets that could be redeemed for non-immediate rights of replay" did not fall within the exclusion); *Hardy*, 102 S.W.3d at 125 (holding "that an eight-liner that rewards the player with cash, even if that cash is used only to play another machine, fails to satisfy the section 47.01(4)(B) exclusion").

[11] Enacted in 1999, chapter 2153 codified statutes initially adopted in 1969 to regulate and tax coin-operated machines. *See generally Thompson v. Calvert*, 489 S.W.2d 95, 96–98 (Tex. 1972) (discussing chapter 2153's predecessor statutes).

[12] A "coin-operated machine" includes "any kind of machine or device operated by or with a coin or other United States currency, metal slug, token, electronic card, or check, including a music or skill or pleasure coin-operated machine." TEX. OCC. CODE § 2153.002(1). A "skill or pleasure coin-operated machine" includes "any kind of coin-operated machine that dispenses, or is used or is capable of being used to dispense or afford, amusement, skill, or pleasure or is operated for any purpose, other than for dispensing only merchandise, music, or service." *Id.* § 2153.002(9). This includes a machine "that dispenses merchandise or commodities or plays music in connection with or in addition to dispensing skill or pleasure," but does not include "an amusement machine designed exclusively for a child." *Id.* § 2153.002(9)(A) & (B).

permits them to restrict the exhibition of a machine "within 300 feet of a church, school, or hospital." *Id.* § 2153.452. However, the chapter expressly does not "authorize or permit the keeping, exhibition, operation, display, or maintenance of a machine [that is] prohibited by the constitution of this state or the Penal Code." *Id.* § 2153.003.

### E. The Fort Worth Ordinances

In 2014, the Fort Worth City Council grew weary of what it concluded were the "deleterious" effects of eight-liners in their communities. According to the City, eight-liner game rooms cause "increased crime, such as gambling, theft, criminal trespass, criminal mischief, and burglary," contribute "to urban blight," and "downgrad[e] the quality of life" in their surrounding areas. So the City Council passed two ordinances to regulate "amusement redemption machines" and associated "game rooms" within the City. The "zoning ordinance" imposes, among other things, zoning restrictions confining game rooms to industrial-zoned areas and prohibiting them from operating within 1000 feet of a residential district, church, school, hospital, or another game room. The "licensing ordinance" generally requires game-room operators to obtain a license from the City and to pay a licensing and inspection fee.

### F. The lawsuit

Stephannie Rylie, Texas C&D Amusements, Inc., and Brian and Lisa Scott (doing business as TSCA and River Bottom Pub) (collectively "the Operators") own and operate eight-liners in Fort Worth. At least for purposes of this case, the Operators admit that their eight-liners qualify as "gambling devices," but they contend that they operate their machines in a way that brings them within the fuzzy-animal exclusion. The Operators filed this suit against the City seeking a

7

declaration that chapter 2153 completely preempts the ordinances, or alternatively, that it partially preempts the ordinances to the extent of any conflict between the two.[13]

In response, the City argued that chapter 2153 does not preempt the ordinances at all because the Operators' eight-liners are unconstitutional lotteries and illegal gambling devices and, by its own terms, chapter 2153 does not apply to unconstitutional or illegal machines. TEX. OCC. CODE § 2153.003 ("This chapter does not authorize or permit the keeping, exhibition, operation, display, or maintenance of a machine, device, or table prohibited by the constitution of this state or the Penal Code.").[14] In addition, the City filed a counterclaim for declaratory relief, requesting a declaration that the fuzzy-animal exclusion is unconstitutional because it purports to authorize lotteries, which the constitution requires the legislature to prohibit.

All parties moved for summary judgment.[15] The trial court granted the Operators' motion in part, holding that chapter 2153 does not completely preempt the ordinances but does preempt ten specific ordinance provisions that conflict with chapter 2153's provisions.[16] The court denied

---

[13] The Operators also alleged that the Texas Alcoholic Beverage Code preempts ordinance provisions that prohibit or restrict the sale, purchase, possession, or consumption of alcoholic beverages within a game room. The court of appeals agreed. 563 S.W.3d 346, 365–66 (Tex. App.—Fort Worth 2018). Because neither party challenges that holding in this Court, we do not address it.

[14] The City also argued that the Operators' machines are not skill or pleasure coin-operated machines under chapter 2153. The trial court and court of appeals rejected that argument, *see* 563 S.W.3d at 356, and the City accepts that ruling for purposes of this appeal.

[15] The City conceded, "for the sole purposes of" its motion seeking summary judgment on its counterclaim, "that the [fuzzy-animal exclusion] authorizes the Operators' machines." In response to the Operators' summary-judgment motion, however, the City argued that the fuzzy-animal exclusion does not apply to the Operators' eight-liners.

[16] For example, the court held that: (1) section 2153.452, which allows municipalities to impose zoning rules restricting the exhibition of a machine "within 300 feet of a church, school, or hospital," preempts the zoning ordinance's prohibition of game rooms within 1000 feet of a residential district, church, school, hospital, or other game room; and (2) section 2153.453, which allows municipalities to seal a machine if the owner fails to pay the city's tax and charge "not more than" $5 to unseal it preempts the licensing ordinance's imposition of a $100 unsealing fee.

the City's summary-judgment motion and instead declared that the fuzzy-animal exclusion is constitutional. The parties voluntarily dismissed all other claims and defenses, and the trial court entered a final judgment incorporating its summary-judgment orders.

Both sides appealed. The Operators argued the trial court erred by holding that chapter 2153 does not completely preempt the ordinances and by addressing the merits of the City's constitutional attack on the fuzzy-animal exclusion. The City argued the trial court erred by holding that chapter 2153 applies to the machines and partially preempts the ordinances. Importantly, the City did not appeal from the trial court's denial of its motion for summary judgment on its counterclaim seeking a declaration that the fuzzy-animal exclusion is unconstitutional. 563 S.W.3d at 358 n.13. Although it argued that the exclusion is unconstitutional, it did so in defense against the Operators' complete-preemption argument (i.e., in support of its argument that chapter 2153 does not apply to the Operators' eight-liners), not to show that the court erred by dismissing its counterclaim.

The court of appeals affirmed in part and reversed in part. 563 S.W.3d at 365–66. First, it agreed with the Operators that the trial court should not have addressed the fuzzy-animal exclusion's constitutionality when deciding whether chapter 2153 preempts the ordinances, reasoning that chapter 2153 applies to the Operators' eight-liners regardless of whether the eight-liners are constitutional or legal. *Id.* at 356–57. Specifically, the court noted that section 2153.003 provides that chapter 2153 does not "authorize or permit" unconstitutional or illegal machines, not that it "exempt[s]" them from chapter 2153's regulations or that it does not "apply to" or "regulate" them. *Id.* at 57. In the court's view, nothing prevents the legislature from regulating and taxing unconstitutional or illegal conduct, and section 2153.003 merely clarifies that the chapter does not

9

make an unconstitutional or illegal machine legitimate or legal just because the chapter applies to, regulates, and taxes it.

Based on this conclusion, the court held that the machines' constitutionality or legality (and thus the fuzzy-animal exclusion's constitutionality) is irrelevant to the preemption issue,[17] so any decision on the machines' constitutionality or legality would be advisory and that issue is therefore non-justiciable in this case. *Id.* (citing TEX. R. APP. P. 47.1; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). The court thus reversed the portion of the trial court's judgment declaring the exclusion constitutional and dismissed the City's counterclaim for want of jurisdiction. *Id.* at 365–66.[18]

The court then agreed with the trial court's holding that chapter 2153 does not completely preempt the ordinances but does preempt conflicting provisions. *Id.* at 359. In the court's view, section 2153.001's statement that the chapter's purpose is to "provide comprehensive and uniform statewide regulation" of such machines does not express "with unmistakable clarity" an intent to preempt the "field" of regulation of coin-operated machines. *Id.* (citing *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)).

---

[17] 563 S.W.3d at 358–59 ("[B]ecause chapter 2153 (and the City's ordinances) apply to the Operators' machines regardless of whether they are illegal or unconstitutional, section 47.01(4)(B)'s constitutionality is irrelevant here.").

[18] We note that in the trial court, the exclusion's constitutionality may actually have been justiciable even if it were irrelevant to the preemption issue because it was indisputably relevant to the City's *independent* counterclaim seeking declaratory judgment on that very issue. The City does not complain about the court of appeals' failure to recognize this distinction, however (presumably because it did not appeal from the portion of the trial court's judgment dismissing its counterclaim), and instead appealed only to challenge the portion of the judgment addressing the Operators' preemption claim. Because the City did not appeal the dismissal of its counterclaim, the only issue before us is whether the constitutionality/legality issue is relevant to the preemption issue and therefore justiciable.

Both sides petitioned this Court for review. The Operators argue that the court of appeals, like the trial court before it, erred in holding that chapter 2153 does not *completely* preempt the City's ordinances. The City argues: (1) the court of appeals erred in holding that the fuzzy-animal exclusion's constitutionality is irrelevant to the preemption issue and thus non-justiciable; (2) chapter 2153 does not preempt the ordinances *at all* because it does not "authorize or permit," and thus does not apply at all to, unconstitutional or illegal machines; and (3) the Operators' machines are unconstitutional lotteries or, alternatively, they are illegal gambling devices that the fuzzy-animal exclusion does not legalize because (a) they do not fall within the exclusion or, if they do, (b) the exclusion itself is unconstitutional.

## II.
### Justiciability

The parties' arguments in this Court present a cobweb of issues that, as an initial matter, challenge us to determine which we should address first. As we have explained, the ultimate issue in this Court is whether chapter 2153 preempts the City's ordinances, either completely (as the Operators contend), in part because of conflicts (as the court of appeals held), or not at all (as the City contends). But to resolve that issue, we must first decide whether chapter 2153 even applies to and regulates the Operators' eight-liners. If it does not, it cannot preempt the ordinances— completely, partially, or at all. So we must begin by considering whether chapter 2153 applies to and regulates the Operators' eight-liners.

But that issue presents sub-issues as well. The City argues that chapter 2153 *does not* apply to or regulate the Operators' eight-liners *if* (as the City contends) the machines or the fuzzy-animal exclusion are unconstitutional or illegal. The court of appeals concluded that chapter 2153 *does* apply to and regulate the eight-liners, *regardless* of whether the machines or the fuzzy-animal

11

exclusion are unconstitutional or illegal. So to decide whether chapter 2153 applies to and regulates the eight-liners, we must first decide (1) whether their constitutionality and legality affect chapter 2153's applicability, and if so, then decide (2) whether they are constitutional and legal. On the first point, we conclude that constitutionality and legality matter because chapter 2153 does not apply to or regulate unconstitutional or illegal machines. We do not address the second issue, however, because it represents an important issue of first impression in this Court and the court of appeals did not reach it. We thus remand the case to that court so that it can address and decide that issue in the first instance.

## A. Chapter 2153's applicability

As described, chapter 2153 regulates "skill or pleasure coin-operated machines." TEX. OCC. CODE § 2153.001. In this Court, the City does not contest that the Operators' eight-liners qualify as coin-operated machines, but instead contends that chapter 2153 does not apply to them at all if they are unconstitutional or illegal. We agree.

Section 2153.003 provides that chapter 2153 "does not *authorize or permit* the keeping, exhibition, operation, display, or maintenance of a machine, device, or table prohibited by the constitution of this state or the Penal Code." TEX. OCC. CODE § 2153.003 (emphasis added). To "authorize" means to "give legal authority," and to "permit" means to "consent to formally," or "to allow or admit of" an activity. *Authorize*, *Permit*, BLACK'S LAW DICTIONARY 129, 1160 (7th ed. 1999).[19] So under section 2153.003, chapter 2153 does not give legal authority to

---

[19] When, as here, a statute does not define a term, we typically apply the term's common, ordinary meaning, derived first from applicable dictionary definitions, unless a contrary meaning is apparent from the statute's language. *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017).

unconstitutional or illegal machines, and it does not consent to or allow people to keep, exhibit, or operate such machines.

Adopting the court of appeals' reasoning, the Operators argue that section 2153.003 (which is entitled "Construction of Chapter Consistent With Other Laws") merely clarifies that, although the chapter applies to and regulates unconstitutional and illegal machines, it does not thereby make them constitutional or legal. *See* TEX. OCC. CODE § 2153.003. As they construe it, although the state may license and tax machines, the chapter does not provide a shield of legality to someone charged with operating an illegal machine. The Operators support this construction by noting that section 2153.003 states that the chapter "does not authorize or permit" unconstitutional or illegal machines, while the next section, 2153.004, provides a list of machines to which the chapter "does not apply," and that list does not include unconstitutional or illegal machines. *See* TEX. OCC. CODE § 2153.004.

The Operators concede that their construction renders section 2153.003 surplusage, because it is a "well-established truism" that the legislature cannot "license" unconstitutional activities. But, they contend, the City's construction leads to an "absurd" result. Under the City's construction, they argue, "an amusement machine operator acting within the law is taxed and regulated, while someone who operates outside the law is not."

We are not convinced. To begin with, we do not agree that the result the Operators complain of is absurd. We will not construe a statute's language to produce "patently nonsensical results," but this absurdity bar "is high, and should be," because "mere oddity does not equal absurdity." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013). It may seem "odd" that the legislature would choose to license, tax, and regulate legal machines but not illegal

13

ones, yet that's exactly what it does with a multitude of other products and activities. It regulates and taxes authorized pharmaceuticals but not illicit drugs, permissible firearms but not illegal weapons, and legitimate personal services but not forbidden ones. Indeed, the legislature does not *usually* regulate and tax illegal activities—it *usually* punishes and prohibits them. And that's what the constitution demands in this context: "The Legislature shall pass laws prohibiting lotteries." TEX. CONST. art. III, § 47. If the legislature exercises power the constitution says it doesn't have— that is, if it permits lotteries when it only has the power to prohibit them—we take the constitution's word over that of the legislature. In light of the constitution's requirement that the legislature prohibit lotteries, construing chapter 2153 to apply to, license, and tax unconstitutional or illegal gambling devices seems far more absurd than construing it not to apply.

But more importantly, we do not find the Operators' textual arguments convincing either. While we acknowledge that section 2153.004 expressly addresses machines to which the chapter "does not apply" and does not include unconstitutional or illegal machines in the list, s*ee* TEX. OCC. CODE § 2153.004, the legislature need not state what it does not have the power to do. Section 2153.004's list does not include slot machines, video-poker machines, or any of the other machines the penal code labels as illegal gambling devices, yet no one argues that chapter 2153 applies to, licenses, regulates, and taxes those machines.

This illuminates the problem at hand. The Operators argue that chapter 2153 applies to their eight-liners because the state has literally licensed their machines. The Operators hold general business licenses issued by the state to operate their eight-liners. And the state generates revenue from the machines through the taxes and fees it imposes. *See* TEX. OCC. CODE § 2153.401

14

(imposing an occupation tax on coin-operated machines). But those facts do not establish that chapter 2153 applies to unconstitutional or illegal machines.

The Operators themselves contend that their machines are constitutional and legal, in which case chapter 2153 would apply to them even under the City's construction of section 2153.003. And if (as the City contends) they are unconstitutional or illegal, the fact that the state has licensed and taxed them would not change the meaning of section 2153.003 any more than it could change the meaning of the constitution's requirement that the legislature prohibit lotteries. The legislature cannot change or ignore the meaning of the constitution's text. *See Ferguson v. Wilcox*, 28 S.W.2d 526, 533 (Tex. 1930) ("[W]hen the Constitution provides and commands that a thing shall be done, the matter must be done as directed, and neither the Legislature, Executive, nor the courts have the authority to set aside the mandates."). If the legislature were permitting activities the constitution requires it to prohibit, that action would be *ultra vires* and cannot be allowed to stand, no matter the Operators' good-faith reliance on those actions.

But most importantly, we think section 2153.003's plain language makes it clear that chapter 2153 does not apply to unconstitutional or illegal machines. As explained, chapter 2153 requires that coin-operated machines to which the chapter applies and their owners be licensed or registered and pay an annual licensing fee and occupations tax. *Id.* §§ 2153.151–.154, .157, .401. Assuming compliance with the chapter's requirements, the license or registration provided under chapter 2153 literally authorizes or permits the owner to keep, exhibit, operate, or maintain the machine. *See id.* § 2153.356 (making it a criminal offense to operate a machine to which chapter 2153 applies without a valid license or registration certificate). In this context, section 2153.003's statement that the chapter does not authorize or permit an unconstitutional or illegal machine can

only mean that such a machine cannot be licensed or registered under chapter 2153. And if the machine cannot be licensed under chapter 2153, the taxes, zoning restrictions, and other provisions that regulate licensed and registered machines do not apply to those machines.

Because of this, we cannot accept the court of appeals' construction of section 2153.003. Courts must construe statutes to avoid constitutional infirmities. *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). The legislature is commanded to pass laws to prohibit lotteries, and construing section 2153.003 to apply to lotteries has the effect of legitimizing them. The text permits another reasonable construction that abides by the statute's plain language while avoiding those constitutional infirmities. Chapter 2153 does not "authorize" (give legal authority to) or "permit" (consent to or allow to operate by law) unconstitutional or illegal machines. If it "applied to" unconstitutional or illegal machines, it would necessarily give legal authority to them and allow them to legally operate, in violation of the constitution. We conclude that, in light of section 2153.003, chapter 2153 does not apply to unconstitutional or illegal machines.

**B. Constitutionality and legality**

Because we conclude that chapter 2153 does not apply to unconstitutional or illegal machines, the next question is whether the Operators' machines are unconstitutional or illegal. Contrary to the court of appeals' conclusion, that question is relevant and justiciable because if the machines are unconstitutional or illegal, then chapter 2153 does not apply to them and thus cannot

16

preempt the City's ordinances.[20] But as described, the court of appeals did not address that question. Because the question presents an important issue of first impression in this Court, we decline to address the question in the first instance and defer instead for the court of appeals to address it after full briefing and argument by the parties. *See Pidgeon v. Turner*, 538 S.W.3d 73, 87 (Tex. 2017) (declining to "render a final ruling on the merits before the parties have had a full opportunity to make their case"); *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016) (remanding case for "court of appeals to address [unaddressed] questions in the first instance").

### III.
### Conclusion

We hold the court of appeals erred by concluding that the issue whether the Operators' machines are constitutional and legal is irrelevant to the question whether chapter 2153 preempts the City's ordinances and is therefore non-justiciable. We reverse the court of appeals' judgment and remand the case to that court so that it can address and resolve that issue in the first instance.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 8, 2020

---

[20] Of course, a finding that the machines are unconstitutional or illegal would also lead to the question whether the City could license, regulate, and tax them through the City's ordinances. That question, however, has not been raised in this case.